IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02349–WJM–KMT


CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT,
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION, and
ROOSEVELT PUBLIC POWER DISTRICT,

      Plaintiffs,

v.

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., and
HAROLD "HUB" THOMPSON,

      Defendants.

---

## ORDER

---

This matter is before the court on "Defendant Tri-State's Motion to Stay Certain Discovery Pending the Ruling on Tri-State's Motion to Dismiss" (Doc. No. 6.)

### PROCEDURAL HISTORY

This case originally was filed in the United States District Court for the District of Nebraska on September 28, 2009. While the case was in the District of Nebraska, Defendants Harold Thompson and Tri-State Generation and Transmission Association, Inc. (Tri-State) filed motions to transfer venue pursuant to 28 U.S.C. § 1404(a) (Doc. Nos. 1-29, 1-30, 1-37, 1-38), and motions to dismiss (Doc. Nos. 1-33, 1-34, 1-40, 1-41). Defendant Tri-State also filed the present motion to stay and brief in support of the motion to stay on May 10, 2010. (Doc. Nos. 1-

61 [Mot] and 1-62 [Def.'s Brief].)  Plaintiff filed its response on May 14, 2010.  (Doc. No. 1-65 [Resp.].)  Defendant Tri-State filed its Reply on May 21, 2010.  (Doc. No. 1-66 [Reply].)  On August 19, 2010, Senior District Judge Lyle E. Strom of the District of Nebraska issued his Order that the case be transferred to the United States District Court for the District of Colorado. (Doc. No. 1.)

The case was transferred to the District of Colorado on September 24, 2010, and was assigned to District Judge Philip A. Brimmer.  On January 5, 2011, Judge Brimmer referred the motion to this court for ruling (Doc. No. 14) and this court held a Scheduling Conference (Doc. No. 15).  After discussion with the parties, this court continued the informal agreement of the parties to stay the case, discussed *infra*, continued the Scheduling Conference, and allowed the parties to submit supplemental briefing on the motion to stay.  (*Id.*)  Defendant Tri-State and Thompson submitted their supplemental briefs in support of the motion to stay on January 19, 2011.  (Doc. No. 16 [Tri-State's Supplement]; Doc. No 17 [Thompson's Supplement].) Plaintiffs filed their supplemental response brief on January 26, 2011.  (Doc. No. 20 [Pls.' Supplement].)

This case subsequently has been reassigned to District Judge William J. Martinez (Doc. No. 21), and motions to dismiss remain pending before Judge Martinez.  (Doc. Nos. 4, 5.)

## STATEMENT OF CASE

In the proposed Scheduling Order, the parties submitted the following joint introductory statement:

Defendant Tri-State is a wholesale electric power generation and transmission association incorporated and operating under Colorado's cooperative association laws.  As a cooperative, Tri-State has members, not shareholders.

Tri-State is owned by and serves 44 member cooperatives located in Colorado, Nebraska, New Mexico and Wyoming.  The Plaintiffs are five of Tri-State's members; all are located in western Nebraska.  The Plaintiffs are cooperatives or public power districts serving member-consumers also located in western Nebraska.  Tri-State and Plaintiffs receive support from the federal Rural Utility Service, formerly known as the Rural Electrification Association.  Neither Tri-State nor Plaintiffs conduct their business for profit.

Tri-State is governed by a Board of Directors (the "Board").  Each of Tri-State's 44 members has one representative on the Board.  The Board elects Tri-State's President.  Defendant Harold "Hub" Thompson is a former member of the Board.  He is also the former Chairman of Tri-State's Board, and former President of Tri-State.  Mr. Thompson no longer serves as an officer of Tri-State or as a member of the Board.

(Doc. No. 13 at 2–3.)

In their Complaint, Plaintiffs assert the following eight claims for relief:

| | |
|---|---|
| First Claim: | Breach of Contract in Setting Plaintiffs' Rates |
| Second Claim: | Breach of Convenant of Good Faith and Fair Dealing |
| Third Claim: | Common Law Obligation to Fairly Set Rates |
| Fourth Claim: | Breach of Contract - Failure to Establish Equitable Terms and Conditions to Allow Plaintiffs to Withdraw from Tri-State |
| Fifth Claim: | Breach of Fiduciary Duty as Tri-State Directors and members of the Nebraska Withdrawal Committee |
| Sixth Claim: | Breach of Fiduciary Duty as Chairman and President of the Board of Tri-State |
| Seventh Claim: | Declaratory Judgment Regarding Entitlement to WAPA Allocations |
| Eighth Claim: | Breach of Contract with WAPA |

(Doc. No. 1-2 [Compl.].)  Defendants categorize Plaintiffs claims as follows:

*First*, Plaintiffs allege four claims (the first, second, third and eighth claims, hereafter collectively the "Rate Claims") challenging Tri-State's "postage stamp" wholesale electric power rate.  Tri-State's rates are called "postage stamp" rates because Tri-State charges the same price for the same types of power to all of Tri-State's 44 members no matter where the members are located.  The 44

members of Tri-State's Board determine this rate by majority vote and pursuant to the parties' All Requirements Contracts.  Plaintiffs' Rate Claims allege that the postage stamp rate is unreasonable and unfair.  Plaintiffs make these allegations despite the fact that Tri-State's Board has consistently established a postage stamp rate every year for many decades.  Tri-State's Motion to Dismiss seeks dismissal of the Rate Claims.

*Second*, Tri-State's bylaws provide that a member may withdraw from Tri-State upon, *inter alia*, compliance with such "equitable terms and conditions" as Tri-State's Board may establish.  In early 2009, Plaintiffs asked the Board to establish such "equitable terms and conditions" for their withdrawal from Tri-State. In September of 2009, Tri-State's Board established such equitable terms and conditions (the "2009 Withdrawal Terms").  In their fourth claim, Plaintiffs allege that the 2009 Withdrawal Terms constitute a breach of Tri-State's bylaws.  In their seventh claim, Plaintiffs seek a declaration that, in the event they withdraw from Tri-State, certain allocations of electric power from a federal government entity (the Western Area Power Administration or "WAPA") would belong to Plaintiffs rather than Tri-State.  Tri-State's Motion to Dismiss seeks dismissal of the seventh claim, but not the fourth claim.

*Third*, Plaintiffs have agreed to dismiss their fifth claim, which was previously asserted against Mr. Thompson and others.  The Parties have not agreed whether this dismissal will be with or without prejudice as to Mr. Thompson.[1]  Nevertheless, Plaintiffs' only remaining claim against Mr. Thompson is the sixth claim.  In the sixth claim, Plaintiffs allege that Mr. Thompson breached purported fiduciary duties allegedly arising from his former status as Tri-State's President and Chairman of the Board. Plaintiffs allege that Mr. Thompson did so only after the March 3, 2009 date on which Plaintiffs submitted a resolution to Tri-State's Board asking that Tri-State either lower their rates or give them "equitable terms and conditions" for withdrawal from Tri-State.

(*Id.* at 19–21 [footnote added].)

## MOTION TO STAY

Defendant Tri-State seeks a stay of discovery concerning the five claims it has moved to dismiss.  (Mot. at 1.)  Defendant Thompson joins in the motion.  (*See* Thompson's Supplement.)

---

[1]The motion to dismiss is pending before Judge Martinez, who will decide whether the dismissal will be with or without prejudice.

At the time Defendant Tri-State filed the motion to stay, it also sought to stay discovery on

Plaintiffs' fourth and sixth claims, except to allow each party to serve on each other five written

interrogatories and ten document requests solely concerning the fourth and sixth claims.  (*Id.*)

The parties represented in their proposed Scheduling Order that, while the case was still in the

District of Nebraska, they had a telephone conference with the magistrate judge there, and the

parties agreed to conduct limited written discovery only on the fourth and sixth claims for relief.

(*See* Doc. No. 13 at 4.)  Plaintiffs served such written discovery on June 18, 2010, and

Defendants Tri-State and Thompson have responded.  (*Id.*)  At this point, Defendants seek to

stay all remaining discovery pending a ruling on the motions to dismiss.  (*See* Tri-State's

Supplement at 2; Thompson's Supplement at 1.)  Plaintiffs oppose a stay as to the remaining

discovery.  (*See* Pls.' Supplement.)

## LEGAL STANDARD

The decision to issue a protective order and thereby stay discovery rests within the sound

discretion of the trial court.  *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990).  Such protection

is warranted, upon a showing of good cause, to "protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  The

underlying principle in determination of whether to grant or deny a stay clearly is that "[t]he

right to proceed in court should not be denied except under the most extreme circumstances."

*Commodity Futures Trading Com'n v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477,

1484 (10th Cir. 1983) (quoting *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)).  In

other words, stays of the normal proceedings of a court matter should be the exception rather

than the rule.  As a result, stays of all discovery are generally disfavored in this District.  *Chavez v. Young Am. Ins. Co.*, No. 06-cv-02419-PSF-BNB, 2007 WL 683973, at *2 (D. Colo. Mar. 2.2007) (citation omitted).

However, a stay may be appropriate in certain circumstances.  Indeed, "a court may decide that in a particular case it would be wise to stay discovery on the merits until [certain challenges] have been resolved."  8 Charles Alan Wright et al., Federal Practice and Procedure § 2040, at 521-22 (2d ed. 1994) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided."); *see also Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir.1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.").  The court weighs several factors when evaluating the propriety of a stay.  *See String Cheese Incident, LLC v. Stylus Show, Inc.*, No. 02-cv-01934-LTB-PAC, 2006 WL 894955, at * 2 (D. Colo. Mar. 30, 2006) (describing five-part test).  The court considers (1) the interest of Plaintiff; (2) the burden on Defendants in going forward; (3) the court's convenience; (4) the interest of nonparties; and (5) the public interest in general.  *Id.*

## ANALYSIS

First, the court balances Plaintiff's desire to proceed expeditiously with its case against the burden on the defendants of going forward.  *Id.*  Plaintiffs argue that because their interests are not limited to recovering money damages for overcharges for power supplied by Defendant Tri-State but also include requests for equitable terms and conditions for withdrawal from Tri-State, until such equitable terms and conditions are provided by the Tri-State Board, or as a

6

result of this litigation, Plaintiffs "remain captive to Tri-State." (Pls.' Supplement at 6.) Plaintiff

argue that, while this litigation is pending, their opportunities to find an alternative supplier may

be significantly diminished. (*Id.* at 7.)

While this court appreciates the desire for a prompt resolution of this action, that

consideration, standing alone, does not override the court's independent obligation to manage the

discovery process in light of the burden or expense of the proposed discovery, its likely benefit,

and the importance of the discovery in resolving the issues. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).

Defendant Tri-State argues that discovery on the Rate Claims will greatly increase the scope,

burden, and expense of discovery in this case because the Rate Claims "implicate the entire

history of Tri-State's postage-stamp rate, which dates to the 1950s, while Plaintiffs' other two

claims . . . focus on events that occurred in 2009." (Tri-State's Supplement at 16.) Plaintiffs

disagree with the extent of discovery that would be required and disagree that their claims

implicate the entire history of Tri-State's postage rate stamp. (Pls.' Supplement at 10.)

However, Defendant Tri-State argues that 2007 contracts at issue are virtually identical to

contracts that have been in place between the parties for over fifty-years and that if the implied

covenant claims survive the motion to dismiss, Defendant Tri-State will need to provide

discovery about the rate structure charged to every Tri-State Member since 1956 as evidence it

will use in defense of the case; information about how board members representing Plaintiff'

have voted for over fifty years; information about Plaintiffs' support of the now-disputed rate

structure going back fifty-eight years; and information about WAPA's and RUS's approval of the Tri-State postage stamp rate approval going back over fifty years.  (Tri-State's Reply at 3–4.)

Defendant Tri-State further argues that the Rate Claims, if not dismissed, will require the Court to conduct a complex and discovery-intensive utilities rate-making proceeding.  (*Id.*) Defendant Tri-State further argues that if the Rate Claims are not dismissed, Tri-State will file counterclaims against Plaintiffs asserting that Plaintiff received an improper benefit during many of the previous years when Plaintiffs have paid less than their fair shares compared to other members as a result of Tri-State's charging a Postage-Stamp Rate.  (Tri-State's Supplement at 5.)

Plaintiffs argue that Defendant Tri-State's assertion that they will file counterclaims is merely speculative.  (Pls.' Supplement at 10–11.)  However, Defendant Tri-State also represented to the court in the Scheduling Conference that it will file counterclaims if the motions to dismiss are not granted.  The court finds, after reviewing the arguments presented in the subject motion and reviewing the arguments presented by Defendants in their pending motions to dismiss, that Defendants have demonstrated a real hardship or inequity if a stay is not granted.  *See Ben Ezra, Weinstein, & Co. v. America Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000).  Ultimately, if Plaintiffs prevail, their damages will be adjusted to compensate for any delays in the judicial process.  The court finds, therefore, that the burden on Defendants of going forward outweighs Plaintiff's desire to proceed expeditiously with its case.

The court also considers its own convenience, the interest of nonparties, and the public interest in general.  The court finds that these factors weigh in favor of granting a stay as to the

8

moving parties.  The public, who are served by both Plaintiffs and Defendants, have an interest in the case; however, again, there is a monetary remedy for the plaintiffs (and their customers), should the plaintiffs prevail.  None of these factors prompt the court to tip the scales in any different direction.  The court's time is not well-served by being involved in possible discovery motions and other incidents of discovery where, as here, dispositive motions are pending.  The court finds that a stay of discovery is warranted to protect all of the parties from annoyance and undue burden or expense until the court resolves what issues will be proceeding.  Fed. R. Civ. P. 26(c)(1).  Therefore, it is

ORDERED that "Defendant Tri-State's Motion to Stay Certain Discovery Pending the Ruling on Tri-State's Motion to Dismiss" (Doc. No. 6).  Discovery is **STAYED** in this matter pending ruling on the pending motions to dismiss.  It is further

ORDERED that the parties shall place a conference call to this court's chambers within ten days of the district court's ruling on the motions to dismiss to set a scheduling conference.

Dated this 4th day of March, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge