**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02349-WJM-KMT

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT,
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION, and
ROOSEVELT PUBLIC POWER DISTRICT,

      Plaintiffs,

v.

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., and
HAROLD "HUB" THOMPSON,

      Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

---

      This matter is before the Court on Defendant Tri-State's Motion to Dismiss (ECF No. 4, 1-40, 1-41) and Defendant Harold Thompson's Motion to Dismiss Plaintiffs' Fifth Claim Based on His Status as a Member of the Nebraska Withdrawal Committee (ECF No. 5, 1-33, 1-34).  The motions are fully briefed and ripe for adjudication.  (*See also* ECF No. 1-52, 1-55, 1-57.)  For the following reasons, Tri-State's Motion to Dismiss is GRANTED IN PART and DENIED IN PART, and Harold Thompson's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### I.  BACKGROUND

      For purposes of the pending Motions, which are brought under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the following allegations from Plaintiffs' Complaint as true.

Each of the five Plaintiffs is an electrical distribution cooperative, public power district, or electrical membership association ("electricity retailer") that provides electricity to end-user consumers in rural areas of Nebraska. (ECF No. 1-2, ¶ 3.) Plaintiffs receive the electricity they provide from Defendant Tri-State, a generation and transmission association ("G&T"). (*Id.* ¶ 4.) The five Plaintiffs and 21 other electricity retailers joined together to form Tri-State in 1952. (*Id.* ¶ 72.) Tri-State has since expanded and currently consists of 44 member-owners located in Nebraska, Colorado, New Mexico, and Wyoming. (*Id.* ¶¶ 4, 61.) The Tri-State Board of Directors ("the Tri-State Board" or "the Board") consists of 44 individuals, each of whom represents one of those 44 member-owners (Plaintiffs have five such representatives on the Board combined). (*Id.* ¶ 87.)

The electricity that Tri-State supplies to Plaintiffs is generated and transmitted to Tri-State by one of two entities: the Western Area Power Administration ("WAPA"), a United States governmental entity, and Basin Electric Power Cooperative, a North Dakota-based G&T. (*Id.* ¶ 5.)

The relationships between Plaintiffs and Tri-State have been governed recently by contracts entered into in 2001 (that were made effective through the year 2040), and contract extensions entered into in 2007 (that were made effective through the year 2050). (*Id.* ¶¶ 92-93.) These contracts are "all requirements" contracts, whereby Tri-State is required to provide all the electricity needed by Plaintiffs, and Plaintiffs are required to purchase virtually all of their energy needs from Tri-State. (*Id.* ¶ 8.) The Tri-State Board sets the rates for the purchase of this electricity by its members. (*Id.*)

One basis for this lawsuit is Plaintiffs' complaint regarding the rates charged by

Tri-State.  (*Id.* ¶¶ 9-14.)  Tri-State charges all of its members the same rate for electricity, termed a "postage stamp" rate.  (*Id.* ¶¶ 111-113.)  Plaintiffs complain that this rate-charging method is unfair because Tri-State's costs to provide electricity to Plaintiffs are low, but Tri-State's costs to provide electricity to certain other Tri-State members is quite high.  (*Id.* ¶¶ 114-115.)  For example, Plaintiffs claim that Tri-State has recently made significant capital investments in the front range of Colorado to provide electricity not only to rural end-users there, but also to industrial end-users.  (*Id.* ¶¶ 84-86, 119.)  Due to the postage stamp rate-charging method used by Tri-State, Plaintiffs allege that they have in effect subsidized this development in the front range of Colorado.  (*Id.*)  Plaintiffs bring four claims in their Complaint against Tri-State based on these allegedly unfair rates:  (1) two claims alleging that Tri-State breached the covenant of good faith and fair dealing implied in its contracts with Plaintiffs (the First and Second Claims in the Complaint)[1]; (2) a common law claim alleging breach of Tri-State's obligation to fairly set utility rates (the Third Claim); and (3) a claim alleging that Tri-State breached its contract with WAPA to charge sufficiently low rates to Tri-State's members (the Eighth Claim).  (*Id.* ¶¶ 139-170, 224-232.)

The other basis for this lawsuit relates to Plaintiffs' attempts to withdraw from Tri-State.  In the spring of 2009, Plaintiffs requested that the Tri-State Board arrive at equitable terms and conditions for Plaintiffs to withdraw from Tri-State.  (*Id.* ¶ 123.)  In

---

[1] Although the First Claim is officially a breach of contract claim, and the Second Claim is based on alleged breach of the implied covenant of good faith and fair dealing (ECF No. 1-2, ¶¶ 139-164), Plaintiffs concede in their Response to the Motions to Dismiss that the two claims are based on the same theory:  breach of the implied covenant of good faith and fair dealing (*see* ECF No. 1-52, at 10 n.4.)

response, Defendant Harold Thompson, the Chair of the Board, created a "Nebraska Withdrawal Committee" comprised of seven Tri-State Board members.  (*Id.* ¶¶ 21-22.) The Nebraska Withdrawal Committee included Thompson himself, and did not include any of the five Board members representing Plaintiffs' interests on the Board.  (*Id.* ¶¶ 22, 24.)  The Nebraska Withdrawal Committee created, and the Board approved, withdrawal proposals to each of the five Plaintiffs.

Plaintiffs allege that the unreasonableness of the terms of the withdrawal proposals effectively precluded Plaintiffs from being able to withdraw from Tri-State.  (*Id.* ¶ 36.)  Plaintiffs bring four other claims in their Complaint based on these allegedly inequitable withdrawal provisions:  (1) a breach of contract claim against Tri-State alleging that Tri-State did not provide Plaintiffs with equitable terms and conditions for withdrawal (the Fourth Claim); (2) a claim seeking a declaratory judgment that Plaintiffs, upon withdrawal from Tri-State, should be entitled to certain WAPA power allocations that are currently allocated to Tri-State (the Seventh Claim); and (3) two breach of fiduciary duty claims against Harold Thompson based on his role as a member of the Nebraska Withdrawal Committee (the Fifth Claim)[2] and based on his role as Chair of the Board (the Sixth Claim).  (*Id.* ¶¶ 171-223.)

Tri-State now moves, under Federal Rule of Civil Procedure 12(b)(6), to dismiss five of the six claims brought against it:  (1) the two breach of the implied covenant of good faith and fair dealing claims; (2) the common law claim alleging breach of the

---

[2] Plaintiffs also originally brought their Fifth Claim against the other six members of the Nebraska Withdrawal Committee.  (ECF No. 1-2, ¶¶ 184-194.)  However, Plaintiffs subsequently voluntarily dismissed without prejudice their claim against those other six individuals.  (ECF No. 1-26.)

obligation to fairly set utility rates; (3) the claim alleging that Tri-State breached its contract with WAPA; and (4) the claim seeking a declaratory judgment that Plaintiffs are entitled to WAPA power allocations. (ECF No. 4, 1-40, 1-41.)[3]

Defendant Thompson also moves, pursuant to Rule 12(b)(6), to dismiss the Fifth Claim, alleging breach of fiduciary duty in Thompson's role as a member of the Nebraska Withdrawal Committee. (ECF No. 5, 1-33, 1-34.)[4]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." In evaluating such a motion, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is

---

[3] Tri-State does not move to dismiss the Fourth Claim, the breach of contract claim against Tri-State alleging that Tri-State did not provide Plaintiffs with equitable terms and conditions for withdrawal.

[4] Thompson does not move to dismiss the Sixth Claim, the breach of fiduciary duty claim based on Thompson's role as the Chair of the Tri-State Board.

improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.  ANALYSIS

**A.      Tri-State's Motion to Dismiss**

**1.      Claims Based on Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs' Complaint alleges that Tri-State breached the implied covenant of good faith and fair dealing in its contracts with Plaintiffs, based on the rates Tri-State charges. (ECF No. 1-2, ¶¶ 139-164.)  Specifically, Plaintiffs allege that Tri-State's use of the postage stamp rate-charging method is inherently unreasonable, and done in bad faith, given that it results in excessive charges compared to Tri-State's actual costs to provide electricity to Plaintiffs.  (*See id.*)  Plaintiffs allege that Tri-State most recently breached the implied covenant when it renewed use of the postage stamp rate-charging method, and rejected Plaintiffs' requests for cost-based rates, at September 2009 Board meetings.  (*Id.* ¶¶ 147, 159.)

Tri-State moves to dismiss these claims on the ground that, at the time that Plaintiffs entered into the 2007 contract extensions, they were well aware of Tri-State's use of the postage stamp rate-charging method.  (ECF No. 1-41, at 13-21.)  Therefore, Tri-State argues, Plaintiffs could not have a reasonable expectation at the time of contract formation that they would be charged in any other way, and so Plaintiffs' bad faith claims must fail as a matter of law.  (*Id.*)  In response, Plaintiffs argue, *inter alia*, that their reasonable expectations – their state of mind – at the time of contract formation is a fact-specific inquiry not appropriate for resolution on a Rule 12(b)(6)

motion to dismiss.  (ECF No. 1-52, at 10-19.)

> Colorado, like the majority of jurisdictions, recognizes that every contract contains an implied duty of good faith and fair dealing. . . . The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. . . . The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time.  The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party.  However, it will not contradict terms or conditions for which a party has bargained. . . .  Whether a party acted in good faith is a question of fact which must be determined on a case by case basis.

*Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995) (citations omitted); *see also*

*ADT Sec. Servs., Inc. v. Premier Home Prot., Inc.*, 181 P.3d 288, 293 (Colo. App.

2007).  In *Amoco Oil*, a case relied on heavily by Plaintiffs, the Colorado Supreme Court

upheld a jury's verdict that the defendant had breached the implied covenant, where the

defendant had exercised its discretion under the governing contracts to increase

charges to its service station dealers following contract formation.  908 P.2d at 498-99.

In *ADT*, a case relied on heavily by Tri-State, the Colorado Court of Appeals reversed a

verdict in favor of the plaintiff on an implied covenant claim, where the defendant had

discretion to set charges but merely maintained the same charges that existed at the

time of contract formation.  181 P.3d at 292-95.

The Court finds it inappropriate to dismiss Plaintiffs' breach of the implied

covenant claims at this early stage of the proceedings.  Notably, both *ADT* and *Amoco*

*Oil* were decided on a full evidentiary record.  Here, however, Tri-State's Motion is

based only on the allegations of Plaintiffs' Complaint and the governing contractual

provisions.  The Court concludes that those contractual provisions are not sufficiently

clear such that the Court can definitively determine at the pleading stage what the parties' reasonable expectations were at the time of contract formation. *See Interwave Tech., Inc. v. Rockwell Automation, Inc.*, No. Civ.A.05-398, 2005 WL 3605272, at *12 (E.D. Pa. Dec. 30, 2005) ("[W]hile the doctrine of the implied covenant of good faith and fair dealing may be limited by implied duties based on reasonable expectations emanating from specific language in the contract, the Court finds that [plaintiffs] have presented enough in their pleading to survive a motion to dismiss. [Defendant's] discovery will no doubt be directed strongly at these issues. In the absence of wholly explicit and unambiguous contractual language specifically defining the parties' expectations concerning actions necessary to consummate the Transaction, it would be inappropriately precipitous at this time to dismiss [plaintiffs'] breach of an implied covenant of good faith claim.").

This case is similar to *ADT* in that Tri-State has consistently charged its members based on the postage stamp rate-charging method. However, the Court notes that *ADT* involved the continuation of the defendant's method of charging a flat $200 fee to its members. This case, however, only involves a consistent *method* for calculating electricity rates. The record is not developed as to what actual, particular rates Tri-State has charged Plaintiffs, and how those actual rates have changed over time. Also, the Complaint details a complex factual backdrop of Tri-State membership that has changed significantly over time, and significant changes in Tri-State's various costs of doing business for that membership. (ECF No. 1-2, ¶¶ 72-86.) The Court cannot therefore say that, as a matter of law at the pleading stage, Tri-State could not have breached the implied covenant of good faith and fair dealing by continuing to use the

8

same rate-charging method.  *See Interwave Tech., Inc.*, 2005 WL 3605272, at *12; *see also Zimmer Spine, Inc. v. Wainwright*, CIV No. 10-cv-4725, 2011 WL 3035133, at *5 (D. Minn. July 7, 2011) ("Further, whether [defendant's] conduct, on a fully developed record, will be found to constitute breach of the implied covenant of good faith and fair dealing cannot factor into this Court's decision on [defendant's] motion to dismiss. To the extent that [defendant] believes that the record developed through discovery does not support a claim for breach of the covenant of good faith and fair dealing, it may bring a motion for summary judgment at that time, but dismissal of the claim at this point is not warranted.").

Tri-State's Motion to Dismiss Plaintiffs' First and Second Claims in the Complaint is denied.

### 2.    Claim Based on Common Law Obligation to Fairly Set Rates

Plaintiffs' Third Claim in the Complaint, entitled "Common Law Obligation to Fairly Set Rates," alleges that Tri-State has breached its common law obligation to set rates that are fair and reasonable.  (ECF No. 1-2, ¶¶ 165-170.)

Tri-State's moves to dismiss this claim, pointing out that choice of law provisions in the governing contracts between Plaintiffs and Tri-State provide that Colorado law governs the contracts.  (ECF No. 1-41, at 13 n.9, 21 n.13.)  Tri-State then explains that the common law duty to fairly set utility rates has been preempted in Colorado by a comprehensive scheme of state constitutional amendments, statutes, and regulations that govern Colorado's public utilities.  (*Id.* at 21-25.)  Therefore, Tri-State argues, this claim fails as a matter of law.  (*Id.*)

In response, Plaintiffs argue that Nebraska law, not Colorado law, applies to this

claim because Nebraska has a sufficiently significant interest in the dispute that should overcome application of the choice of law provisions in the governing contracts.  (ECF No. 1-52, at 21-22.)  Plaintiffs then proceed to explain that Nebraska law allows for judicial review of public utility rates.  (*Id.* at 22-24.)  Plaintiffs do not effectively challenge Tri-State's argument that Plaintiffs' claim fails if Colorado law applies.  Thus, the only question presented to the Court is whether Colorado law applies to this claim (in which case the claim would be preempted) or whether Nebraska law applies (in which case the claim would appear to be viable).

The Court agrees with Tri-State that Colorado law applies, and therefore this claim is properly dismissed.  The governing contracts contain a provision stating, "This Contract shall in all respects be governed by, and controlled in accordance with, the laws of the State of Colorado."  (*See, e.g.*, ECF No. 1-42, Ex. A § 11.c, Ex. B § 11.4.) Plaintiffs argue that this choice of law provision should not be applied, citing the Restatement (Second) of Conflict of Laws section 187(2), which provides,

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied . . . ***unless*** either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties.

(emphasis added).  Plaintiffs argue, unpersuasively, that provision (b) of section 187(2) applies here.  The Court is not persuaded that Nebraska has a materially greater

interest than Colorado in this dispute, or that Nebraska law would apply in the absence of the choice of law provision in the contracts.  This action challenges decisions by the Tri-State Board (both rate-setting decisions and the decision regarding Plaintiffs' withdrawal from Tri-State).  Importantly, all Tri-State Board meetings take place in Colorado, and Board members may only attend Board meetings in person in Colorado. (ECF No. 1-71, at 6-7.)  For this reason, in addition to the other bases upon which the United States District Court for the District of Nebraska relied to transfer this action to this District on September 24, 2010, this Court concludes that Plaintiffs do not have a legitimate basis to challenge the application of the choice of law provision in the governing contracts.

In fact, Plaintiffs themselves allege in the Complaint that Colorado law governs their claims based on Tri-State's alleged breach of the implied covenant of good faith and fair dealing.  (ECF No. 1-2, ¶¶ 143, 154 ("The All Requirements contracts between Tri-State and each of the Plaintiffs are governed by Colorado law.").)  Plaintiffs appear to argue that their claim based on a common law obligation to fairly set rates should be treated differently, however, simply because Colorado does not recognize the claim and Nebraska does.  This the Court declines to do.  Plaintiffs' warnings that applying Colorado law will leave Plaintiffs without any recourse are empty given that the Court is allowing Plaintiffs to proceed on their First, Second, and Eighth Claims in the Complaint. The Court grants Tri-State's Motion to Dismiss as to Plaintiffs' Third Claim based on a common law obligation to fairly set rates.  That claim is dismissed with prejudice.  *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (stating that dismissal with prejudice is appropriate where amendment could not cure the defect in the complaint).

11

3. **Claim Alleging Breach of Tri-State/WAPA Contract**

Tri-State also moves to dismiss Plaintiffs' Eighth Claim based on Tri-State's alleged breach of its contract with WAPA in the setting of Plaintiffs' rates, which allegedly damaged Plaintiffs as third-party beneficiaries of the Tri-State/WAPA contract. (ECF No. 1-41, at 31-36.)  As identified in the Complaint, Tri-State agreed in its contract with WAPA "that the benefits of firm electric power or energy supplied under the contract shall be made available to its consumers at rates that are established ***at the lowest possible level consistent with sound business principles***."  (ECF No. 1-2, ¶ 228 (emphasis added).)  Plaintiffs allege in the Complaint that Tri-State breached this contract, arguing that this contractual provision obligates Tri-State "to charge cost-based rates for WAPA power." (*Id.* ¶ 231.)

Tri-State moves to dismiss the claim on two grounds.  First, Tri-State argues that Plaintiffs have failed to specifically allege that Tri-State breached its contractual obligation to set rates "at the lowest possible level consistent with sound business principles." (ECF No. 1-41, at 31-33.)  As Tri-State points out, Plaintiffs have instead alleged that Tri-State breached its contractual obligation to "charge cost-based rates," which Tri-State argues is an unwarranted leap in logic from the actual applicable contractual provision.  (*Id.*)  Second, Tri-State argues that, nevertheless, the claim is not plausible.

The Court agrees that Plaintiffs' pleading of their Eighth Claim amounts in part to legal argument regarding what the Tri-State/WAPA contract requires of Tri-State. However, the Court does not agree that this warrants dismissal of the claim.  Plaintiffs

have identified the contract that forms the basis of the claim, identified the specific

contractual provision at issue, and alleged breach of the contract.  Although Plaintiffs

have included legal argument in their pleading that the contractual provision at issue

requires cost-based rates, Tri-State has effectively been put on notice of the nature of

Plaintiffs' claim.  *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("[T]he [short and

plain] statement [required by Fed. R. Civ. P. 8(a)(2)] need only 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" (quoting *Twombly*,

550 U.S. at 555)).  The Court declines to accept Tri-State's overly technical argument.[5]

The Court also rejects Tri-State's argument that the claim is not plausible.  Tri-

State pieces together its argument by (1) scrutinizing particular language from the 2007

contract extensions authorizing it to charge rates that recover certain costs (ECF No. 1-

41, at 33), (2) citing contractual language requiring Tri-State to charge rates sufficient

for Tri-State to be able to repay its indebtedness to the Rural Utilities Service (*id.* at 33-

34), and (3) relying on the Federal Energy Regulatory Commission's apparent approval

of WAPA's use of postage stamp rates on particular projects (*id.* at 34-36).  That is all

evidence that the Court might consider at the summary judgment stage, or the jury

might consider at trial, in determining whether Tri-State fulfilled its contractual obligation

to set rates "at the lowest possible level consistent with sound business principles."  It is

not appropriate for the Court to resolve this breach of contract claim at the pleading

---

[5] The Court further notes that, even if it were to accept this particular argument of Tri-State, the result would be providing Plaintiffs leave to amend their claim.  Given that Plaintiffs are being allowed to proceed past the pleading stage as to numerous other claims in this action, the Court declines to require Plaintiffs to amend this claim based on the overly-technical pleading requirements advanced by Tri-State.

stage based on an alleged breach of such a general and ambiguous contractual provision. *See Test Servs., Inc. v. Princeton Review, Inc.*, No. 05-cv-01674, 2005 WL 3211594, at *5 (D. Colo. Nov. 29, 2005) ("[I]f a contract is found to be ambiguous, a motion for summary judgment – much less a motion to dismiss – on a breach of contract claim is improper." (quotation marks omitted)); *see also Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992) ("If the language of an alleged contract is ambiguous . . ., the interpretation of the language is a question of fact which the court cannot properly determine on a motion to dismiss." (quotation marks and brackets omitted)).

Tri-State's Motion to Dismiss Plaintiffs' Eighth Claim in the Complaint is denied.

### 4.      Claim Regarding Entitlement to WAPA Allocations

Plaintiffs' Seventh Claim in the Complaint is based on Plaintiffs' allegation that certain power Tri-State receives from WAPA is specifically designed by WAPA to reach end-user consumers in Nebraska.  (ECF No. 1-2, ¶¶ 215-217.)  Plaintiffs' claim seeks a declaratory judgment from this Court that, if Plaintiffs withdraw from Tri-State, they are entitled to these allocations of WAPA power currently being allocated from WAPA to Tri-State.  (*Id.* ¶ 223.)  Plaintiffs complain that the withdrawal proposals provided to Plaintiffs by Tri-State contain a provision stating that such WAPA power allocations "will remain the property of and under the control of Tri-State."  (*Id.* ¶ 221.)

Tri-State moves to dismiss the claim, arguing, *inter alia*, that this Court has no authority to issue such a declaratory judgment because WAPA and other federal governmental entities have the exclusive authority to allocate federal hydropower.  (ECF No. 1-41, at 25-30.)  Tri-State argues that such a governmental agency decision is

14

discretionary and therefore not subject to judicial review under the Administrative

Procedures Act.  (*Id.*)

In response, Plaintiffs explain in detail the historical context of the power

allocations and why it would be unfair for Tri-State to retain allocations of WAPA power

following Plaintiffs' withdrawal from Tri-State.  However, Plaintiffs do not directly

address the question of whether this Court has any authority to issue a ruling regarding

Plaintiffs' rights to receive allocations of federal power from WAPA.  In fact, Plaintiffs

make the apparent concession that they "agree with Tri-State that WAPA should make

this determination" regarding allocations of federal power.  (ECF No. 1-52, at 32.)

The Court agrees with Tri-State that the Court is not empowered to issue a

declaratory judgment regarding how WAPA should distribute federal power in the future.

At the very least, the Court declines to do so.  If Plaintiffs withdraw from Tri-State, and if

Tri-State seeks to retain allocations of WAPA power that Plaintiffs believe they are

entitled to, Plaintiffs will have avenues available to them to seek relief.  For example,

Plaintiffs will be able to contact WAPA directly to challenge Tri-State's attempts to retain

the power allocations.  Also, Plaintiffs would be able to sue to attempt to enforce Tri-

State's apparent contractual obligation with WAPA to provide WAPA power to certain

locations within Plaintiffs' territories in Nebraska.

The Court grants Tri-State's Motion to Dismiss the Seventh Claim.  The claim is

dismissed with prejudice.  *See Curley*, 246 F.3d at 1282.

## B.     Harold Thompson's Motion to Dismiss

As previously mentioned, Harold Thompson's Motion to Dismiss only seeks

dismissal of Plaintiffs' Fifth Claim in the Complaint, which alleges that Thompson

15

breached his fiduciary duty as a member of the Nebraska Withdrawal Committee.  (ECF

No. 1-34.)  In the Motion, Thompson argues that Colorado Revised Statute § 7-55-107

shields directors from liability for breach of fiduciary duty, except where the director (1)

breaches the duty of loyalty; (2) engages in bad faith, intentional misconduct, or a

knowing violation of law; or (3) derives an improper personal benefit from a transaction.

(*Id.* at 6-8.)  In their Response to the Motion, Plaintiffs state that they

> do not challenge [Mr. Thompson's] motion to dismiss at this time, provided
> such dismissal is without prejudice. . . . Because discovery on Plaintiffs'
> Sixth Claim could bring additional facts to light in connection with Mr.
> Thompson's conduct as a member of the Nebraska Withdrawal
> Committee, Plaintiffs submit that, as was the case with Plaintiffs' voluntary
> dismissal of the other six members of the Nebraska Withdrawal
> Committee, dismissal of their Fifth Claim for Relief should be made
> without prejudice.

(ECF No. 1-52, at 27-28.)  In his Reply, Thompson argues that the dismissal should be

with prejudice because Plaintiffs have failed to allege that any of the exceptions to the

bar on director liability apply, and because "Plaintiffs do not contest Mr. Thompson's

position and have not requested leave to amend."  (ECF No. 1-57, at 3.)

　　　　Given that Plaintiffs do not contest Thompson's Motion to Dismiss the Fifth Claim

in the Complaint, the Court will dismiss the claim.  In terms of whether the dismissal

should be with or without prejudice, Thompson is correct that (1) Plaintiffs have not

explicitly requested leave to amend, and (2) Plaintiffs have not challenged Thompson's

argument that a director can only be held personally liable for breach of fiduciary duty if

one of the three statutory exceptions applies.  However, Plaintiffs have indicated that

they may seek to revive their Fifth Claim against Thompson if Plaintiffs uncover

evidence during discovery that would support the claim.  Plaintiffs have at least

impliedly conceded that they would only attempt to revive their Fifth Claim if they uncover evidence of conduct by Thompson that would fall within one of the three statutory exceptions to the bar on director liability.  The Court holds that the Fifth Claim is properly dismissed without prejudice.  Thompson's Motion to Dismiss is granted in that Plaintiffs' Fifth Claim is hereby dismissed, but Thompson's Motion is denied to the extent the Motion seeks dismissal of the Fifth Claim with prejudice.

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

(1)     Defendant Tri-State's Motion to Dismiss (ECF No. 4, 1-40, 1-41) is

         GRANTED IN PART and DENIED IN PART;

(2)     Defendant Harold Thompson's Motion to Dismiss Plaintiffs' Fifth Claim

         Based on His Status as a Member of the Nebraska Withdrawal Committee

         (ECF No. 5, 1-33, 1-34) is GRANTED IN PART and DENIED IN PART;

(3)     Plaintiffs' Third Claim for Relief in their Complaint (ECF No. 1-2), brought

         against Tri-State Based on Alleged Breach of a Common Law Obligation

         to Fairly Set Rates, is DISMISSED WITH PREJUDICE;

(4)     Plaintiffs' Fifth Claim for Relief in their Complaint, brought against Harold

         Thompson Based on Alleged Breach of Fiduciary Duty in Thompson's

         Role as a Member of the Nebraska Withdrawal Committee, is DISMISSED

         WITHOUT PREJUDICE;

(5)     Plaintiffs' Seventh Claim for Relief in their Complaint, brought against Tri-

         State seeking a declaratory judgment regarding entitlement to WAPA

         allocations, is DISMISSED WITH PREJUDICE; and

17

(6)    Tri-State's Motion to Dismiss is DENIED as to Plaintiffs' First, Second, and

Eighth Claims for Relief in their Complaint.  Given that no Defendant has

moved to dismiss Plaintiffs' Fourth and Sixth Claims, this action shall

proceed as to Plaintiffs' First, Second, Fourth, Sixth, and Eighth Claims for

Relief in the Complaint.

Dated this 11th day of January, 2012.

BY THE COURT:

William J. Martínez
United States District Judge

18