## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 10-CV-02349-WJM-KMT

CHIMNEY ROCK PUBLIC POWER
DISTRICT, *et al.*,

      Plaintiffs,

v.

TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION, INC., *et al.*,

      Defendants


TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION, INC.,

      Counterclaim Plaintiff,

v.

CHIMNEY ROCK PUBLIC POWER
DISTRICT, *et al.*,

      Counterclaim Defendants.

---

### PROPOSED SUPPLEMENTAL SCHEDULING ORDER

---

### 1.  DATE OF CONFERENCE
### AND APPEARANCES OF COUNSEL AND *PRO SE* PARTIES

Pursuant to Magistrate Judge Tafoya's December 20, 2012 Order (ECF No. 112), a

Scheduling/Status Conference has been set for February 14, 2013 at 9:45 a.m. in this matter.

That December 20, 2012 Order directed that: "The parties shall submit a joint proposed Supplemental Scheduling Order concerning Tri-State's counterclaims Doc. No. [84] on or before February 7, 2013." The parties and their counsel are:

(1) The four plaintiff entities (collectively "Plaintiffs"), namely Chimney Rock Public Power District ("Chimney Rock"), Midwest Electric Cooperative Corporation ("Midwest"), Northwest Rural Public Power District ("Northwest"), and Panhandle Rural Electric Membership Association ("PREMA") are represented by Raymond L. Gifford, Philip J. Roselli, Adam Peters and Gregory Sopkin of Wilkinson, Barker, Knauer, 1755 Blake Street, Suite 470, Denver, Colorado 80202, (303) 626-2350;

(2) Defendant Tri-State Generation and Transmission Association, Inc. ("Tri-State") is represented by Robert E. Youle, Brian G. Eberle and Michael B. Carroll of Sherman & Howard, LLC, 633 17th Street, Denver, Colorado 80202, (303) 297-2900;

(3) Defendant Harold "Hub" Thompson ("Thompson") is represented by Daniel M. Reilly, Eric Fisher, John McHugh, Mark Premo-Hopkins and Caleb Durling of Reilly Pozner LLP, 1900 16th Street, Suite 1700, Denver, Colorado 80202, (303) 893-6100;

(4) Counterclaim-defendants Wayne Cobb and Jerry Underwood ("Cobb and Underwood") are represented by Andrew J. Petrie and Sarah B. Wallace of Featherstone Petrie DeSisto LLP, 600 17th Street, Suite 2400S, Denver, Colorado 80202, (303) 626-7100;

(5) Counterclaim-defendants Ryan Reiber and Rolland Skinner ("Reiber and Skinner") are represented by James Kilroy and Christine McCallister Garrison of Snell & Wilmer LLP, 1200 17th Street, Suite 1900, Denver, Colorado 80202, (303) 634-2000.

2

## 2. STATEMENT OF JURISDICTION

Reiber and Skinner, and Cobb and Underwood, do not stipulate that this Court has subject matter jurisdiction.

Plaintiffs and Tri-State stipulate that this Court has both personal and subject matter jurisdiction of all claims between Plaintiffs and Tri-State. The Court has subject matter jurisdiction over those claims based on diversity of citizenship under 28 U.S.C. § 1332.

Tri-State and Thompson state that this Court has both personal and subject matter jurisdiction of all claims.

In their Answer to Tri-State's Amended Counterclaims (Doc. No. 114), Plaintiffs denied the allegation that Tri-State has subject matter jurisdiction over Tri-State's newly added claims against the four individual parties, Messrs. Cobb, Underwood, Skinner and Reiber.

## 3. STATEMENT OF CLAIMS AND DEFENSES

### A.      Plaintiffs' Statement.

The Parties fundamentally disagree regarding their respective understanding of the scope of the supplemental scheduling order that they are required to submit pursuant to the Court's December 20, 2012 Order. That Order directed that: "The parties shall submit a joint proposed Supplemental Scheduling Order concerning Tri-State's counterclaims Doc. No. [84] on or before February 7, 2013." So fundamental was this disagreement that the Parties could not even agree on the title of this pleading. Plaintiffs believed this pleading should be captioned "Proposed Supplemental Scheduling Order Concerning Tri-State's Counterclaims Doc. No. 84," as this is,

3

verbatim, the scope of what the December 20, 2012 Order requested from the Parties. Tri-State would not agree to that title. In the interest of making this a joint submission as requested by the Court, Plaintiffs finally agreed to the title: "Proposed Supplemental Scheduling Order."

Despite yielding on the title of this joint submission, Plaintiffs believe that the Court's December 20, 2012 Order clearly contemplates that the Parties should jointly prepare and submit a supplemental scheduling order pertaining only to Tri-State's counterclaims, and, specifically, only those new counterclaims admitted by this Court's November 30, 2012 Order Granting Defendant Tri-State's Motion to Amend the Scheduling Order and to Assert Additional Counterclaims (Doc. No. 83, hereafter "Order Admitting Additional Counterclaims").

Plaintiffs believe that the text of the December 20, 2012 Order, expressly referencing Doc. No. 84, signals that the Court is seeking to establish a separate procedural schedule just for Tri-State's newly added counterclaims. Doc. No. 84 asserted Tri-State's additional counterclaims, as permitted by the Court's November 30, 2012 Order Admitting Additional Counterclaims. Plaintiffs believe that, had the Court wanted the parties to submit a supplemental scheduling order as to all claims, it would have so stated, and not limited the requested submission to "Tri-State's Counterclaims Doc. No. 84," the document that introduces Tri-State's new counterclaims.

The original Scheduling Order in this case, entered by the Court on February 2, 2012, already establishes a procedural schedule for Plaintiffs' claims and Tri-State's original counterclaims against Plaintiffs. That original Scheduling Order has now been modified and extended twice, on August 2, 2012 (Doc. No. 54, extending certain dates by approximately 120

4

days), and again on November 27, 2012 (Doc. No. 80, extending the schedule another approximate 20 days).  In addition, Tri-State's January 21, 2012 Motion for Extension of Time to Enlarge the Discovery Deadline and Dispositive Motions Deadline by 60 Days (Doc. No. 124, hereafter "Tri-State Motion to Enlarge by 60 Days") has been fully briefed and is before the Court.

Given their understanding of the scope of this submission requested by the December 20, 2012 Order, Plaintiffs do not here restate a summary of their affirmative claims, as this summary was fully set forth in the original February 2, 2012 Scheduling Order.  Understanding that the scope of this Supplemental Scheduling Order should address only Tri-State's additional counterclaims added to this lawsuit by the Court's November 30, 2012 Order Allowing Additional Counterclaims, Plaintiffs state as follows:

Plaintiffs have filed their Answer (Doc. No. 114) to Tri-State's Amended Counterclaims (Doc. No. 84), and generally denied all allegations relating to the new counterclaims that Tri-State has now asserted against Plaintiffs, alleging that each Plaintiff has aided and abetted alleged breaches of fiduciary duty by Messrs. Cobb and Underwood.  Plaintiffs dispute that Messrs. Cobb and Underwood have breached any fiduciary duty that they allegedly owed to Tri-State, or caused any damages to Tri-State, and therefore dispute that any of the Plaintiffs can be liable on an aiding and abetting claim.

**B.     Tri-State's and Thompson's Statement.**

Tri-State has filed a Motion to Enlarge the Discovery Deadline and Dispositive Motions Deadline by 60 Days (the "Motion to Enlarge by 60 Days," ECF No. 124) and a Reply Brief in Support of the Motion to Enlarge by 60 Days (the "Reply Brief," ECF No. 132).   In the Motion to Enlarge by 60 Days, and in the Reply Brief, Tri-State explains, *inter alia*, that discovery on all claims is intertwined such that it would be impractical and inefficient (if not impossible) to bifurcate discovery by subject matter.   For example, Tri-State explains in the Reply Brief, *inter alia*, that: (a) the most important witnesses who have yet to be deposed have key information concerning *all* claims, and (b) bifurcating discovery by subject matter would be inefficient and impractical (if not impossible) and would not move this lawsuit to trial more quickly.   *See* ECF No. 132 at 1-5.   Accordingly, for these and other reasons, Tri-State disagrees with Plaintiffs statements and arguments in Section 3(A) above.

**a.     Defendants' defenses to Plaintiffs' claims.**

In their Complaint, Plaintiffs allege eight claims for relief.   Tri-State and Thompson (collectively "Defendants") do not discuss Plaintiffs' third, fifth or seventh claims for relief here, because those three claims have been dismissed. Plaintiffs' remaining claims for relief (the first, second, fourth, sixth and eighth claims) fall into three categories.

*First*, Plaintiffs currently allege three claims (the first, second, and eighth claims, hereafter collectively the "Rate Claims") challenging Tri-State's "postage stamp" wholesale electric power rate.   Tri-State's rates are called "postage stamp" rates because Tri-State charges

the same price for the same types of power to all of Tri-State's 44 members no matter where the members are located. The 44 members of Tri-State's Board determine this rate by majority vote and pursuant to the parties' All Requirements Contracts. Plaintiffs' Rate Claims allege that the postage stamp rate is unreasonable and unfair. Plaintiffs make these allegations despite the fact that Tri-State's Board has consistently established a postage stamp rate every year for many decades.

*Second*, Tri-State's bylaws provide that a member may withdraw from Tri-State upon, *inter alia*, compliance with such "equitable terms and conditions" as Tri-State's Board may establish. In early 2009, Plaintiffs asked the Board to establish such "equitable terms and conditions" for their withdrawal from Tri-State. In September of 2009, Tri-State's Board established such equitable terms and conditions (the "2009 Withdrawal Terms"). In their fourth claim, Plaintiffs allege that the 2009 Withdrawal Terms constitute a breach of Tri-State's bylaws.

*Third*, Plaintiffs' only remaining claim against Mr. Thompson is the sixth claim. In the sixth claim, Plaintiffs allege that Mr. Thompson breached purported fiduciary duties allegedly arising from his former status as Tri-State's President and Chairman of the Board. Plaintiffs allege that Mr. Thompson did so only after the March 3, 2009 date on which Plaintiffs submitted a resolution to Tri-State's Board asking that Tri-State either lower their rates or give them "equitable terms and conditions" for withdrawal from Tri-State.

With regard to the nature of Defendants' defenses, a number of those defenses were argued in the Defendants' Motions to Dismiss, which are incorporated herein. Defendants have also filed Answers which list their defenses.

7

Many (but not necessarily all) of Defendants' defenses are based on the following issues: (1) that the historical course of dealing and course of performance among Tri-State and its members, including Plaintiffs, under their All Requirements Contracts establishes that Plaintiffs' Rate Claims are not viable; (2) that Tri-State's Board has, with only minor exceptions, had a consistent historical practice of voting in favor of (including Plaintiffs repeatedly voting in favor of) and setting a postage stamp rate for all of its members for many decades, and/or that Plaintiffs executed their All Requirements Contracts and/or extensions of such contracts at times when Plaintiffs knew of this consistent historical practice and knew that Tri-State planned to continue this practice in the future; (3) that Tri-State's postage stamp rate is fair and reasonable today, just as it has been for many decades; (4) that in 2009, Tri-State's Board properly established and approved by majority vote, pursuant to Tri-State's by-laws, the "equitable terms and conditions" for Plaintiffs' potential withdrawal from Tri-State; (5) that Tri-State's member rates comply with the provisions of Tri-State's applicable contracts with WAPA; (6) that the federal government's Rural Electrification Administration, which is now known as the Rural Utility Service, and/or WAPA have for decades known about and/or approved Tri-State's postage stamp member rate, and have not taken the position that such rate constitutes a breach of any law, contract or other obligation applicable to Tri-State; (7) that other G & T's similarly situated to Tri-State, as well as other private and/or government entities in the electric power sector (including Plaintiffs) have (or previously had) postage stamp rates similar to Tri-State's postage stamp rate; (8) that Plaintiffs' claims are unsupportable because Plaintiffs could not have obtained, and/or could not have obtained at any economically viable rate, power or energy from any source other than Tri-

8

State; (9) that statements and assumptions made by Plaintiffs to support their claims, and/or made by Plaintiffs' two disclosed experts in their reports, are unproven and/or are contrary to fact, particularly including but not limited to such statements and assumptions concerning damages and damage causation issues including those relating to the actions (or future actions) of WAPA, Basin Electric Power Cooperative, RUS, and other third-parties; (10) Mr. Thompson's actions were done in good faith and were fair to Tri-State and to Plaintiffs; (11) Mr. Thompson's actions were authorized by Tri-State's Board of Directors, including Plaintiffs' Tri-State representatives; and (12) Mr. Thompson's actions were taken in light of Plaintiffs' Tri-State representatives' admitted conflicts of interest.

Based on the above facts and others, Tri-State asserts separate and/or affirmative defenses based upon failure to state a claim, Plaintiffs' own breaches of contract, negligence and unclean hands, the requirement of RUS approval for any withdrawal of Plaintiffs from Tri-State, statute of limitations, statute of repose and laches, estoppel, waiver, failure to mitigate damages, the defenses and arguments set forth in Tri-State's Motion to Dismiss, failure to establish a basis for an award of attorney fees, the voluntary payment doctrine, fraud and misrepresentation, lack of consideration, setoff, and the business judgment rule.

Based on the above facts and others, Thompson asserts separate and/or affirmative defenses based upon failure to state a claim; Plaintiffs' own breaches of contract, negligence and unclean hands; statute of limitations, statute of repose and laches; waiver and estoppels;  failure to mitigate damages; failure to establish a basis for an award of attorney fees; Plaintiffs' own fraud and misrepresentation; the business judgment rule; Colo. Rev. Stat. § 7-55-107(1)(h); and

Article VII, Section 3 of Tri-State's Articles of Incorporation.

**b.     Tri-State's counterclaims.**

Tri-State asserts a first counterclaim against Plaintiffs for breach of contract.  Under this counterclaim, if a judgment for money damages is entered against Tri-State because it charged Plaintiffs the same postage-stamp rate as all other members rather than charging what Plaintiffs call a "cost-based" rate, then Plaintiffs necessarily breached one or more of their contracts with Tri-State over time by failing to pay Tri-State what Plaintiffs call a "cost-based" rate.

Tri-State asserts a second counterclaim against Plaintiffs for unjust enrichment.  Under this counterclaim, if a money judgment is entered against Tri-State because it charged Plaintiffs the same postage-stamp rate as all other members rather than charging what Plaintiffs call a "cost-based" rate, then Plaintiffs will have received a benefit over time at Tri-State's expense under circumstances that would make it unjust for Plaintiffs to retain that benefit.

Tri-State asserts a third counterclaim against Plaintiffs for fraud, and a fourth counterclaim against Plaintiffs for negligent misrepresentation.  Under these two counterclaims, if Plaintiffs believed that Tri-State was in breach of the 2001 contracts between Tri-State and Plaintiffs because Tri-State charged Plaintiffs the same postage-stamp rate as all other members rather than charging what Plaintiffs call a "cost-based" rate, but Plaintiffs never disclosed that purported breach when conferring with Tri-State concerning (and before Plaintiffs executed) the 2007 contracts between Tri-State and Plaintiffs, then Plaintiffs' failure to disclose constituted fraud and negligent misrepresentation.

Tri-State asserts a fifth counterclaim against Cobb and Underwood for breach of fiduciary

duty, and a sixth counterclaim against Plaintiffs and Reiber and Skinner for aiding and abetting such breach of fiduciary duty.   Under these two counterclaims, Tri-State alleges, *inter alia*, that while Cobb and Underwood were members of Tri-State's Board of Directors (and while Underwood was Tri-State's Treasurer) Cobb and Underwood breached (and Plaintiffs and Reiber and Skinner aided and abetted such breach) the fiduciary duties that Cobb and Underwood owed to Tri-State, including both their duty to disclose and their duty of loyalty, because Cobb and Underwood: (a) were voting members of the NPSIG group, which group sought to facilitate Plaintiffs' avoidance of contractual obligations owed to Tri-State, (b) actively participated in NPSIG even after NPSIG's "primary motivating purpose" was to pursue litigation against Tri-State, *i.e.*, even after NPSIG admittedly "anticipated litigation" against Tri-State, (c) approved and complied with a written Confidentiality Agreement which had the intended purpose of concealing NPSIG's activities from Tri-State, and (d) participated in NPSIG litigation planning against Tri-State, and then asserted privilege in this lawsuit in order to continue to conceal that planning.

**C.**      **Cobb and Underwood's Statement.**

Cobb and Underwood do not assert any claims in this matter.   Cobb and Underwood have not answered the Tri-State's claims against them and, therefore, the only defenses they currently assert are those they have set forth in their pending motion to dismiss.    In the event the Court denies their motion to dismiss, Cobb and Underwood will determine the additional defenses they will assert.

**D.      Reiber and Skinner's Statement.**

Reiber and Skinner contend that Tri-State's counterclaim against them for aiding and abetting breach of fiduciary duty is baseless and transparently retaliatory.  Reiber and Skinner have filed an Fed.R.Civ.P. 12 motion to dismiss, arguing, among other things: (a) that Reiber and Skinner cannot be liable for aiding and abetting breach of fiduciary duty because counterclaim defendants Cobb and Underwood cannot be liable for breach of fiduciary duty; (b) that Tri-State has not asserted a sufficient claim for damages; (c) that Skinner is immune from liability under the Nebraska Political Subdivisions Tort Claims Act, Neb. Rev.Stat. §§13-901, et seq.; and (d) that the counterclaim asserted against Reiber and Skinner is procedurally improper.  If the Court denies Reiber's and Skinner's Fed.R.Civ.P. 12 motion to dismiss, Reiber and Skinner will file their answers.  Reiber and Skinner deny that they aided and abetted breaches of fiduciary duty, and will assert affirmative defenses pursuant to Fed.R.Civ.P. 8(c) with their answers.

## 4. UNDISPUTED FACTS

The following facts are undisputed:  Plaintiffs and Tri-State do not dispute that this Court has personal and subject matter jurisdiction over the claims between Plaintiffs and Tri-State.  The Parties will likely be able to stipulate to certain basic facts relating to at least the nature of the Parties, the general nature of their business, and the dates of certain relevant events.  The Parties plan to negotiate such factual stipulations prior to trial.

## 5. COMPUTATION OF DAMAGES

**A.     Plaintiffs' Computation.**

Given their understanding of the scope of this submission requested by the December 20, 2012 Order, Plaintiffs do not here restate a summary of their computation of damages, as this summary was fully set forth in the original February 2, 2012 Scheduling Order.  Regarding Tri-State's newly added counterclaims, Plaintiffs reserve their right to recover their costs and attotrneys' fees associated with defending against those claims as allowed by law.

**B.     Tri-State's Computation.**

Under its counterclaims solely against Plaintiffs, if judgment is entered in favor of any Plaintiff against Tri-State, Tri-State will seek, *inter alia*, a setoff and/or a money judgment against Plaintiffs for the difference between (a) the amounts *actually paid* by such Plaintiff to Tri-State for electric power and energy; and (b) the amounts such Plaintiff *would have paid* to Tri-State applying the same rate methodology that was used to compute such Plaintiff's own damages against Tri-State.

Under its counterclaims against Cobb and Underwood and Reiber and Skinner (collectively the "Four Individuals") and against Plaintiffs, Tri-State will seek a money judgment for all monetary losses it has suffered resulting from Cobb and Underwood's breach of fiduciary duty, which will include, *inter alia*, monetary damages resulting from Tri-State's efforts to negotiate with Plaintiffs prior to their filing of this lawsuit and monetary damages resulting from Tri-State's defense of this lawsuit.

Tri-State is still investigating the full scope of its monetary damages and therefore cannot provide a full computation of damages.  In order to provide a computation of damages for its counterclaims against the Four Individuals and Plaintiffs, Tri-State needs to complete its discovery regarding such issues as: (1) when Cobb and Underwood first engaged in conduct adverse to Tri-State's interest; (2) the full scope of adverse information that Cobb and Underwood failed to disclose to Tri-State; and (3) the types of costs Tri-State could have avoided or mitigated had Cobb and Underwood properly disclosed all adverse information to Tri-State. Much of the information necessary for Tri-State to prepare a computation of damages will come from the depositions of the Four Individuals, and the Rule 30(b)(6) depositions of Plaintiffs, none of which have yet taken place.

**C.      Cobb and Underwood's Computation.**

Cobb and Underwood do not claim any damages (while reserving, however, their rights to recover attorneys' fees and costs under Rule 11 and/or 28 U.S.C. § 1927).

**D.      Reiber and Skinner's Computation.**

Reiber and Skinner reserve their right to seek attorneys' fees and costs.

## 6.  REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(f)

**a.      Date of Rule 26(f) meeting.**

The Parties held their Rule 26(f) meeting concerning this Supplemental Scheduling Order by telephone on Wednesday, February 6, 2013.

**b.      Names of each participant and party he/she represented.**

Philip J. Roselli on behalf of Plaintiffs, Michael B. Carroll and Brian G. Eberle on behalf of Tri-State, John McHugh on behalf of Thompson, Andrew Petrie and Sarah Wallace on behalf of Cobb and Underwood, and James Kilroy on behalf of Reiber and Skinner.

**c.      Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

Plaintiffs and Defendants made their Rule 26(a)(1) disclosures on June 2, 2010.  The Four Individuals made their Rule 26(a)(1) disclosures on January 7, 2013.  Tri-State supplemented its Rule 26(a)(1) disclosures on January 15, 2013 and plans to do so again prior to the February 14, 2013 Scheduling Conference.  Plaintiffs also plan to supplement their Rule 26(a)(1) disclosures prior to the February 14 2013 Scheduling Conference.

**d.      Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

Cobb and Underwood believe Tri-State's Rule 26(a)(1) disclosures are facially deficient because Tri-State fails to provide any information regarding claimed damages.  Cobb and Underwood also believe that:  (1) Tri-State's assertions that it is entitled to monetary damages resulting from Tri-State's efforts to negotiate with Plaintiffs prior to their filing of this lawsuit and monetary damages resulting from Tri-State's defense of this lawsuit are without any basis in law; and (2) Tri-State's assertions that it cannot identify its damages without discovery are frivolous.

  **e.**  **Statement concerning any agreements to conduct informal discovery.**

The Parties have not reached any agreements to conduct informal discovery.

  **f.**  **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The Parties are using a unified exhibit numbering system applicable to any deposition

exhibits.

The Parties have also agreed that as of December 12, 2012, and as to depositions, a

deposition objection by one preserves the objection for all.

  **g.**  **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

Plaintiffs and Tri-State have conducted substantial document production including the

production of electronically stored information.

Cobb and Underwood, and Reiber and Skinner, state that they do not have any extensive

electronically stored information and discovery as to them will not involve a substantial amount

of information or records maintained in electronic form.

  **h.**  **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

Plaintiffs and Tri-State have previously met and/or conferred regarding settlement, but

have not reached a settlement.

Plaintiffs believe that Court-assisted or private meditation could potentially resolve this lawsuit, and ask that the Court address this issue in the February 14, 2013 Scheduling Conference.

Cobb and Underwood state that there has been no discussion of settlement between Tri-State and Cobb and Underwood.

## 7. CONSENT

All parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8. DISCOVERY LIMITATIONS

**a.      Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.**

i.   <u>Plaintiffs' statement</u>:

Given their understanding of the scope of this submission requested by the December 20, 2012 Order, Plaintiffs do not address this issue as to the claims already subject to the original February 2, 2012 Scheduling Order, as subsequently amended.  That Scheduling Order should continue to govern discovery regarding Plaintiffs' claims and Tri-State's original counterclaims against Plaintiffs.

Regarding Tri-State's counterclaims newly added by Doc. No. 84, Plaintiffs propose herein that discovery regarding these new claims should proceed pursuant to a separate discovery/procedural schedule, and that the presumptive limits set forth in the Federal Rules of Civil Procedure would generally be sufficient.

ii. <u>Tri-State's and Thompson's statement</u>:

Defendants note that the Prior Scheduling Order allows: (1) each "side" to depose 30 witnesses, and in addition to depose all designated expert witnesses, (2) that 5 such depositions per "side" may occur during 2 different days taking up to 14 total hours of questioning, and that all other depositions are subject to the presumptive limit of one day taking up to 7 total hours of questioning, and (3) 50 interrogatories per "side." *See* ECF No. 38 at 19. Defendants believe these limitations on discovery continue to be appropriate as long as Cobb and Underwood and Reiber and Skinner (*i.e.*, the Four Individuals) and Plaintiffs are collectively all considered one "side."

iii. <u>Cobb and Underwood's statement</u>:

Cobb and Underwood disagree that they can be considered "one side" with Plaintiffs for the purposes of proceeding with discovery by deposition and interrogatory. For example, there has been significant discovery on the rate issues, but those are issues in which Cobb and Underwood are not in any way involved. Accordingly, Cobb and Underwood will be unreasonably prejudiced if Plaintiffs' discovery could be used to "exhaust" the discovery available to them.

Cobb and Underwood believe they will not need more than the presumptive 10 depositions and 30 interrogatories.

iv. <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.

Court's Ruling Regarding Section 8(a):

_____

_____

_____

_____

      **b.**       **Limitations which any party proposes on the length of depositions.**

    i.   <u>Plaintiffs' statement</u>:

Given their understanding of the scope of this submission requested by the December 20, 2012 Order, Plaintiffs do not address this issue as to the claims already subject to the original February 2, 2012 Scheduling Order, as subsequently amended. That Scheduling Order should continue to govern discovery regarding Plaintiffs' claims and Tri-State's original counterclaims against Plaintiffs.

Regarding Tri-State's counterclaims newly added by Doc. No. 84, Plaintiffs propose herein that discovery regarding these new claims should proceed pursuant to a separate discovery/procedural schedule, and that the presumptive limits set forth in the Federal Rules of Civil Procedure (1 day of 7 hours per deposition per Rule 30(d)(1)) would be sufficient.

ii. <u>Tri-State's and Thompson's statement</u>:

Defendants note that the Prior Scheduling Order allows 5 such depositions per "side" to occur during 2 different days taking up to 14 total hours of questioning, and that all other depositions are subject to the presumptive limit of one day taking up to 7 total hours of questioning.  *See* ECF No. 38 at 19.  Defendants believe these time limitations on depositions continue to be appropriate as long as the Four Individuals and Plaintiffs are collectively all considered one "side."

iii. <u>Cobb and Underwood's statement</u>:

Cobb and Underwood have proceeded with discovery to date working within the time limitations on depositions.  They do not agree that it would be appropriate to consider them "one side" with Plaintiffs for the reasons set forth above.

Cobb and Underwood will continue to work within the existing limitations, but, particularly with respect to the depositions of Thompson and certain key Tri-State managers, reserve the right to seek additional time.

iv. <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.

Court's Ruling Regarding Section 8(b):

_____

_____

_____

_____


**c.      Limitations which any party proposes on the number of requests for production and/or requests for admission.**

i.  <u>Plaintiffs' statement</u>:

Given their understanding of the scope of this submission requested by the December 20, 2012 Order, Plaintiffs do not address this issue as to the claims already subject to the  original February 2, 2012 Scheduling Order, as subsequently amended.   That Scheduling Order should continue to govern discovery regarding Plaintiffs' claims and Tri-State's original counterclaims against Plaintiffs.

Regarding Tri-State's counterclaims newly added by Doc. No. 84, Plaintiffs propose herein that discovery regarding these new claims should proceed pursuant to a separate discovery/procedural schedule, and that Thirty (30) Requests for Admission would be sufficient.


ii.  <u>Tri-State's and Thompson's statement</u>:

Defendants note that the Prior Scheduling Order allows each "side" to serve 50 requests for production and 50 requests for admission.  *See* ECF No. 38 at 19.  Defendants believe these

time limitations on certain written discovery continue to be appropriate as long as the Four Individuals together with Plaintiffs are collectively all considered one "side."

   iii.  <u>Cobb and Underwood's statement</u>:

Here, again, Cobb and Underwood object to be considered as "one side" with Plaintiffs such that the discovery on the entirely unrelated issues could be used to "exhaust" the discovery available to them.

Cobb and Underwood believe they will not need more than the presumptive 30 requests for production and 30 requests for admission.

   iv.  <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.


Court's Ruling Regarding Section 8(c):

_____

_____

_____

_____

    **d.**    **Other Planning or Discovery Orders.**

### 9.  CASE PLAN AND SCHEDULE

**a.      Deadline for Joinder of Parties and Amendment of Pleadings:**

i.   <u>Plaintiffs' statement</u>:

Plaintiffs position is that the deadline for joinder of parties in this case passed on May 16, 2012 pursuant to the original February 2, 2012 Scheduling Order (Doc. No. 38). Notwithstanding this deadline the Court allowed Tri-State to late add its new counterclaims, after that May 16, 2012 deadline had passed, in the Court's November 30, 2012 Order Allowing Additional Counterclaims.  That Order did not purport to revise the May 16, 2012 deadline for joinder of parties, but did allow Tri-State to assert its new counterclaims.  The Order Allowing Additional Counterclaims remains the subject of outstanding Rule 72 objections filed by Plaintiffs on December 14, 2012 (Doc. No. 100).  Plaintiffs see no need here to further address the deadline for the joinder of parties in the context of Tri-State's newly added counterclaims.

Plaintiffs believe that the Court should now establish a separate procedural schedule for Tri-State's newly added counterclaims, as these claims involve new issues and new parties (Messrs. Cobb, Underwood, Skinner and Reiber) represented by counsel new to this case.  The fiduciary duty issues presented in Tri-State's newly added counterclaims involve completely separate, and severable issues, apart from the contract and cost of service issues presented in Plaintiffs' claims and Tri-State's original counterclaims.  Plaintiffs have presented their argument regarding the fundamentally different nature of Tri-State's new claims, and the scheduling issues created by the introduction of new parties to this case, both in their Rule 72 Objections (Doc. No.

100) to the Court's Order Allowing Additional Counterclaims, and in their January 25, 2013 Response (Doc. No. 130) to Tri-State's January 21, 2013 Motion to Enlarge by 60 Days (Doc. No. 124).

Specifically regarding the question of a deadline for amended pleadings, it is difficult to address this issue as the new individual counterclaim defendants have not yet filed their answers to Tri-State's new counterclaims, having each filed motions to dismiss that remain before the Court.  Plaintiffs would therefore propose that a deadline to amend pleadings, limited to the pleadings associated with Tri-State's newly added counterclaims, be set 14 days after the Court rules on the motions to dismiss that have been filed by the newly added parties (Messrs. Cobb, Underwood, Skinner and Reiber).

   ii.  <u>Tri-State's and Thompson's statement</u>:

Defendants note that the Four Individuals have two separate motions to dismiss pending. Accordingly, the Four Individuals have not yet filed any pleadings in response to Tri-State's counterclaims against them.  Defendants state that, absent some unusual circumstances that might arise if any of the Four Individuals assert any claims against any other parties in this action, there will be no need for additional pleadings after the Four Individuals file their pleadings in response to Tri-State's counterclaims.

   iii.  <u>Cobb and Underwood's statement</u>:

Cobb and Underwood propose a separate deadline for the counterclaim Tri-State has asserted against them, and ask that the Court set the deadline for the joinder of parties and

24

amendment of pleadings 14 days after this Court rules on Cobb and Underwood's pending

motion to dismiss.

iv. <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.


Court's Ruling Regarding Section 9(a):

_____

_____

_____

_____


**b.    Discovery Cut-off:**

i. <u>Plaintiffs' statement</u>:

As indicated, Plaintiffs believe that the Court should establish a separate procedural

schedule for Tri-State's newly added counterclaims.  Plaintiffs disagree with Tri-State's assertion

that discovery on all claims is "inextricably intertwined" for the reasons set forth in Plaintiffs

prior briefings on this issue.   Plaintiffs propose a fact discovery cut-off, limited to discovery

related to Tri-State's newly added counterclaims, be set at 63 days after the Court rules on the

outstanding motions to dismiss filed by the new added parties, Messrs. Cobb, Underwood,

Skinner and Reiber, and that the expert discovery cut-off, limited to discovery related to Tri-

State's newly added counterclaims, be set at 98 days after the Court's disposition of the motions to dismiss.

   ii.   <u>Tri-State's and Thompson's statement</u>:

Tri-State has filed a Motion to Enlarge the Discovery Deadline and Dispositive Motions Deadline by 60 Days (the "Motion to Enlarge by 60 Days," ECF No. 124) and  a Reply Brief in Support of the Motion to Enlarge by 60 Days (the "Reply Brief," ECF No. 132).  In the Motion to Enlarge by 60 Days, and in the Reply Brief, Tri-State explains, *inter alia*, that: (1) discovery on all claims is intertwined such that it would be impractical and inefficient (if not impossible) to bifurcate discovery by subject matter, and (2) Tri-State has asked the Four Individuals to respond to five short written discovery requests concerning their not-yet-pled defenses (the "Written Discovery") prior to depositions of the Four Individuals.

Defendants incorporate the Motion to Enlarge by 60 Days and the Reply Brief herein. Defendants state that, if the Four Individuals properly and timely respond to the Written Discovery, the deadline for fact and expert discovery on all claims and subjects should be April 30, 2013.  Similarly, Tri-State's Motion to Enlarge by 60 Days seeks an enlargement of the deadline for fact and expert discovery on all claims and subjects to April 30, 2013.

iii. <u>Cobb and Underwood's statement</u>:

Cobb and Underwood object to Tri-State's efforts to accelerate their response date via discovery.  While attempting to downplay the discovery it has served, Tri-State has asked Cobb and Underwood to:  (1) state the basis for each and every denial they might in the future assert should the counterclaim against them go forward, as to both Tri-State's allegations and requests for relief; (2) identify each affirmative defense they might in the future assert should the counterclaim against them go forward; (3) identify each person they believe might have information on the preceding two topics, and identify that information; and (4) identify documents that support the denials or defenses, and, if previously produced, identify the documents by Bates number.  Cobb and Underwood believe these requests are premature, inappropriate, burdensome and harassing.

Cobb and Underwood propose a separate deadline for the counterclaim Tri-State has asserted against them, and ask that the Court set the discovery deadline 63 days after this Court rules on Cobb and Underwood's pending motion to dismiss, and that it set the expert discovery deadline 98 days after this Court rules on Cobb and Underwood's pending motion to dismiss.

iv. <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.

Court's Ruling Regarding Section 9(b):

_____

_____

_____

_____


     **c.     Dispositive Motion Deadline:**

  i.  <u>Plaintiffs' statement</u>:

Plaintiffs believe that the Court should establish a separate procedural schedule for Tri-State's newly added counterclaims.  Plaintiffs propose a dispositive motion deadline, limited to motions related to Tri-State's newly added counterclaims, be set at 126 days after the Court rules on the outstanding motions to dismiss filed by the new added parties, Messrs. Cobb, Underwood, Skinner and Reiber.

  ii.  <u>Tri-State's and Thompson's statement</u>:

Defendants believe that the dispositive motions deadline should be at least 30 days after the deadline for fact and expert discovery on all claims and subjects.  Accordingly, Defendants believe the dispositive motions deadline should be June 4, 2013.  Similarly, Tri-State's Motion to Enlarge by 60 Days seeks an enlargement of the dispositive motions deadline to June 4, 2013.

iii. Cobb and Underwood's statement:

Cobb and Underwood propose a separate deadline for the counterclaim Tri-State has asserted against them, and ask that the Court set the dispositive motion deadline 126 days after this Court rules on Cobb and Underwood's pending motion to dismiss.

iv. Reiber and Skinner's statement:

Reiber and Skinner join in Cobb and Underwood's statement above.

Court's Ruling Regarding Section 9(c):

_____

_____

_____

_____

**d.    Expert Witness Disclosure**

**1.    The parties shall identify anticipated fields of expert testimony, if any.**

i. Plaintiffs' statement:

Plaintiffs anticipate that fields of expert testimony relating to Tri-State's newly added counterclaims could include fiduciary duty issues, corporate governance issues or damage issues (responding to any expert disclosures made by Tri-State relating to damages associated with the newly added counterclaims).

ii. <u>Tri-State's and Thompson's statement</u>:

Defendants will soon submit expert disclosures on fiduciary duty issues, on damages, and in rebuttal to Plaintiffs' expert disclosures.  Defendants note that their rebuttal expert disclosures are generally due on February 8, 2013, and that one of Tri-State's expert disclosures concerning liability under certain of its counterclaims is due on February 14, 2013.  Accordingly, Defendants will have disclosed Defendants' fields of expert testimony in detail on or before the date of the February 14, 2013 Scheduling Conference.

iii. <u>Cobb and Underwood's statement</u>:

Cobb and Underwood propose a separate deadline for designating expert witnesses with respect to the counterclaim Tri-State has asserted against them, and ask that the Court set the deadline for them to designate rebuttal experts on the later of 63 days after this Court rules on Cobb and Underwood's pending motion to dismiss, or 63 days after Tri-State provides its expert's final expert report.

Cobb and Underwood believe, without waiving their right to identify any such other expert witnesses or rebuttal expert witnesses as they deem necessary, that they may provide rebuttal expert testimony relating to Cobb and Underwood's fiduciary duties owed to Tri-State and their fiduciary duties owed to their respective NPSIG member public power district or coop.

iv. <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.

>    **2.**      **Limitations which the parties propose on the use or number of expert witnesses.**

The Parties' joint statement:  the parties propose no limitations on the use or number of expert witnesses.

>    **3.**      **The parties shall designate all experts and provide opposing counsel and any *pro se* parties with all information specified in Fed.R. Civ. P. 26(a)(2) on or before _____; and,**

>    **4.**      **The parties shall designate all rebuttal experts and provide opposing counsel and any *pro se* party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before _____.**

   i.  <u>Plaintiffs' statement</u>:

Plaintiffs believe that the Court should establish a separate procedural schedule for Tri-State's newly added counterclaims, and propose a deadline of 63 days after the Court rules on the outstanding motions to dismiss for Plaintiffs or the new individual parties to designate rebuttal experts specific to Tri-State's newly added claims.

   ii.  <u>Tri-State's and Thompson's statement</u>:

Defendants note that Plaintiffs have made their expert disclosures, Defendants' expert disclosures are generally due on February 8, 2013, that one of Tri-State's expert disclosures is due on February 14, 2013, and that any expert disclosure in rebuttal to Tri-State's February 14, 2013 disclosure is due on March 25, 2013.  *See* ECF No. 112.  Defendants believe that, absent some unusual circumstances that might arise if any of the Four Individuals assert any claims against any other parties in this action, this Court need not change this existing schedule for expert disclosures.

     iii.  <u>Cobb and Underwood's statement</u>:

As set forth above, Cobb and Underwood believe a different schedule is both necessary and appropriate with respect to the Tri-State counterclaim against them that is the subject of their pending motion to dismiss.

     iv.  <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.


Court's Ruling Regarding Section 9(d)(3 & 4):

_____

_____

_____

_____


    **e.**     **Identification of Persons to Be Deposed:**

   i.  <u>Plaintiffs' statement</u>:

Notwithstanding that Plaintiffs believe that the Court intended the scope of this submission be limited to establishing a scheduling order to govern Tri-State's newly added counterclaims, Plaintiffs here feel compelled to address the depositions taken and scheduled to date in this case, as Defendants Tri-State and Thompson address this issue below.  Plaintiffs feel compelled to therefore also address this issue to accurately reflect the facts relating to these depositions.

Plaintiffs generally concur with Tri-State's and Thompson's statement below pertaining to the number of depositions that the Parties have already taken, and the additional depositions scheduled, as indicated.   Plaintiffs would add, however, as they made clear in their Response to Tri-State's Motion to Enlarge by 60 Days, that the handful of dates scheduled beyond the March 1, 2013 discovery cut-off are only tentatively scheduled, and are scheduled beyond the discovery cut-off date *solely* because counsel have represented that those witnesses, including Defendant Thompson, could not be made available for deposition at all in either January or February.

Plaintiffs first requested dates for Mr. Child on December 7, 2012.   Tri-State did not respond to that request until December 31, 2012, but by that time the January 10, 14, 15 dates offered by Tri-State would not work for Plaintiffs.   Tri-State then indicated Mr. Child was not available for the duration of January or February, and offered the indicated March 8 date for his depositions.   Plaintiffs requested dates for Messrs. Anderson and Reif on January 6, 2013.   In turn Plaintiffs were informed that neither of these individuals could be made available until March (specifically March 20 for Mr. Reif and March 14 for Mr. Anderson).   Also on January 6, 2013 Plaintiffs requested dates for Defendant Thompson, specifically asking about dates the week of February 4-8, 2013.   On January 20, 2013, Thompson's counsel responded that those dates would not work.   On January 24, 2013, Thompson's counsel followed-up and indicated that Mr. Thompson could not be made available until March 5-7, 2013.   Plaintiffs have indicated they are willing to take this handful (4) of depositions in March, due *solely* to the fact that these witnesses have been unavailable for all of January and all of February (in the case of Mr. Thompson, all of February).   Plaintiffs understand that they will require leave of Court for these

few depositions or proceed beyond the March 1, 2013 deadline, and have made clear to counsel

for Tri-State and Thompson that, if this Court denies such leave, Plaintiffs must proceed with

these depositions in February.

If the Court establishes a separate schedule for Tri-State's newly added counterclaims,

depositions relating to those claims and the fiduciary duty issues presented by those claims would

be subject to that separate procedural schedule.

ii. Tri-State's and Thompson's statement:

Defendants note that the Parties took more than 20 depositions prior to February 7, 2013,

*i.e.*, prior to submitting this proposed Supplemental Scheduling Order.

Defendants state that the following additional persons have yet to be deposed, but their

depositions *are already scheduled* to occur on the following future dates: (1) Rule 30(b)(6)

deposition of Plaintiff PREMA scheduled for February 18 and 19; (2) Rule 30(b)(6) deposition

of Plaintiff Northwest scheduled for February 19 and 20; (3) Rule 30(b)(6) deposition of Plaintiff

Midwest scheduled for February 21; (4) Rule 30(b)(6) deposition of Plaintiff Chimney Rock

scheduled for February 22; (5) deposition of Tri-State's Chief Financial Officer Patrick Bridges

scheduled for February 22; (6) Rule 30(b)(6) deposition of Tri-State concerning certain

counterclaims against Plaintiffs scheduled for February 26; (7) deposition of Plaintiffs' expert

Daniel E. Peaco scheduled for February 27; (8) deposition of Plaintiffs' expert Stephen E. Duree

scheduled for February 28; (9) deposition of former Western Area Power Administration

("WAPA") representative Steve Fausett scheduled for March 1; (10) deposition of defendant

Harold "Hub" Thompson tentatively scheduled to occur during some two day period between March 5 and 7; and (11) deposition of Wayne Child tentatively scheduled for March 8.

Defendants state that at least the following additional persons have yet to be deposed, and their depositions are *not yet scheduled*: (1) Wayne Cobb; (2) Jerry Underwood; (3) Ryan Reiber; (4) Rolland Skinner; (5) Tri-State General Counsel Ken Reif; (6) Tri-State General Manager Ken Anderson; (7) former WAPA representative Frank Knutson; (8) Rule 30(b)(6) deposition of Basic Electric Power Cooperative ("Basin"); (9) deposition of former Basin representative Ronald Harper; (10) depositions of Defendants' several expert witnesses; and (11) depositions of any rebuttal expert witnesses designated on or before March 25, 2013 pursuant to this Court's December 20, 2012 order which is ECF No. 112.

iii. Cobb and Underwood's statement:

Cobb and Underwood offered to schedule their depositions, and offered dates in late January when it had understood the Parties would otherwise be in Nebraska conducting other depositions, but Tri-State responded that it first had to serve discovery and obtain responses before it would be able to proceed.

Similarly, the efforts of Plaintiffs, and Cobb and Underwood coordinating with them on these discovery scheduling matters, to schedule discovery have been stymied by the unavailability of Tri-State's witnesses except for one-day windows located 6-8 weeks or more into the future.

Cobb and Underwood believe, without waiving their right to identify other potential witnesses as they deem necessary that, preliminarily, they will want to depose Tri-State's expert witnesses on fiduciary duty and damages (insofar as the latter relates to the counterclaim against them), Harold Thompson, Ken Reif, Mac McLennan, Jack Finnerty, and a Tri-State Fed. R. Civ. P. Rule 30(b)(6) witness.

iv. <u>Reiber and Skinner's statement</u>:

Reiber and Skinner join in Cobb and Underwood's statement above.

**f.       Deadline for Interrogatories:**

The Parties jointly propose the Court set the deadline to serve interrogatories 30 days before the fact discovery deadline.

Court's Ruling Regarding Section 9(f):

_____

_____

_____

_____

**g.       Deadline for Requests for Production of Documents and/or Admissions**

The Parties jointly propose the Court set the deadline to serve requests for production of documents and requests for admissions 30 days before the fact discovery deadline.

Court's Ruling Regarding Section 9(g):

_____

_____

_____

_____

## 10.  DATES FOR FURTHER CONFERENCES

a.      A settlement conference will be held on_____ at _____ o'clock __.m. It is hereby ordered that all settlement conferences that take place before the magistrate judge shall be confidential.

( )     *Pro se* parties and attorneys only need be present.

( )     Pro se parties, attorneys, and client representatives with authority to settle must be present. (NOTE: This requirement is not fulfilled by the presence of counsel.  If an insurance company is involved, an adjustor authorized to enter into settlement must also be present.)

( )     Each party shall submit a Confidential Settlement Statement to the magistrate judge on or before _____ outlining the facts and issues, as well as the strengths and weaknesses of their case.

b.      Status conferences will be held in this case at the following dates and times:

c.      A final pretrial conference will be held in this case on at _____ o'clock, __. M., on

_____. A Final Pretrial Order shall be prepared by the parties and submitted to the

court no later than five (5) days before the final pretrial conference.

### 11. OTHER SCHEDULING MATTERS

**a.      Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

The Parties note that after a good faith effort they have been unable to agree on the

discovery and scheduling issues discussed in their separate statements above.

**b.      Anticipated length of trial and whether trial is to the court or jury.**

Trial will be to a jury.

As previously indicated, Plaintiffs believe that the Court should establish a separate

procedural schedule for Tri-State's newly added counterclaims. Plaintiffs believe that the trial of

its claims and Tri-State's original counterclaims will require 10-15 trial days.  Plaintiffs believe

that the trial of Tri-State's newly added fiduciary duty and aiding and abetting counterclaims will

require 2-3 trial days.

Tri-State and Thompson believe this lawsuit will require approximately 15 trial days.

Cobb and Underwood, and Reiber and Skinner, believe the new counterclaims for aiding

and abetting breach of fiduciary duty and for breach of fiduciary duty can be tried in 3 days.

All the Parties reserve their right to argue that some particular requests for relief are

properly determined by the Court, rather than by the jury.

38

       **c.**       **Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facility at 212 N. Wahsatch Street, Colorado Springs, Colorado.**

None.

## 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1D. by submitting proof that a copy of the motion has been served upon the moving attorney's client, all attorneys of record, and all *pro se* parties.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1A.

In addition to filing an appropriate notice with the clerk's office, a *pro se* party must file a copy of a notice of change of his or her address or telephone number with the clerk of the magistrate judge assigned to this case.

In addition to filing an appropriate notice with the clerk's office, counsel must file a copy of any motion for withdrawal, motion for substitution of counsel, or notice of change of counsel's address or telephone number with the clerk of the magistrate judge assigned to this case.

## 13.  AMENDMENTS TO SCHEDULING ORDER

This scheduling order may be altered or amended only upon a showing of good cause.


DATED this   _____ day of February, 2013.

BY THE COURT:


_____
United States Magistrate Judge


APPROVED BY:

CHIMNEY ROCK PUBLIC POWER
DISTRICT, MIDWEST ELECTRIC
COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER
DISTRICT, AND PANHANDLE RURAL
ELECTRIC MEMBERSHIP ASSOCIATION,
Plaintiffs


By:     /s/ Philip Roselli_____
        Raymond Gifford
        Philip Roselli
        Adam Peters
        Wilkinson Barker Knauer, LLP
        1755 Blake Street, Suite 470
        Denver, CO  80202
        (303) 626-2350
        rgifford@wbklaw.com
        proselli@wbklaw.com
        apeters@wbklaw.com

HAROLD "HUB" THOMPSON, Defendant

By:     /s/ John McHugh
        Dan M. Reilly
        John McHugh
        Eric Fisher
        Mark Premo-Hopkins
        Caleb Durling
        Reilly Pozner LLP
        1900 16th Street, Suite 1700
        Denver, CO 80202
        (303) 893-6100
        dreilly@rplaw.com
        jmchugh@rplaw.com
        efisher@rplaw.com
        mpremohopkins@rplaw.com
        cdurling@rplaw.com

TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION, INC.,
Defendant

By:     /s/ Michael B. Carroll
        Robert E. Youle
        Michael B. Carroll
        Brian G. Eberle
        Sherman & Howard, LLC
        633 Seventeenth Street, Suite 3000
        Denver, CO 80202
        (303) 297-2900
        ryoule@shermanhoward.com
        mcarroll@shermanhoward.com
        beberle@shermanhoward.com

WAYNE COBB AND JERRY
UNDERWOOD, Counterclaim Defendants

By:     /s/ Andrew J. Petrie
        Andrew J. Petrie
        Sarah B. Wallace
        Featherstone Petrie DeSisto LLP
        600 Seventeenth St., Suite 2400-S
        Denver, CO 80202-5424
        (303) 626-7100
        apetrie@featherstonelaw.com
        swallace@featherstonelaw.com

RYAN REIBER AND ROLLAND SKINNER,
Counterclaim Defendants

By:     /s/ James D. Kilroy
        James D. Kilroy
        Christine McCallister Garrison
        Snell & Wilmer L.L.P.
        1200 Seventeenth St., Suite 1900
        Denver, CO 80202
        (303) 634-2000
        jkilroy@swlaw.com
        cgarrison@swlaw.com

41