IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 10–cv–02349–WJM–KMT

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT,
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION, and
ROOSEVELT PUBLIC POWER DISTRICT,

      Plaintiffs,

v.

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC., and
HAROLD "HUB" THOMPSON,

      Defendants,

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

      Counterclaim Plaintiff,

v.

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT,
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION,
WAYNE COBB,
RYAN REIBER,
ROLLAND SKINNER, and
JERRY UNDERWOOD,

      Counterclaim Defendants.

# ORDER

This matter is before the court on "Cobb and Underwood's Motion to Compel and Request for Hearing" [Doc No. 143, filed March 18, 2013]. After full briefing and a hearing during which all parties were allowed argument, this court took under advisement certain portions of the motion as they related to Requests for Production of Documents (RFP") 26 and 27. (See Minutes dated April 10, 2013 [Doc. No. 159].)[1] Following the hearing, the court required Defendant Tri-State Generation and Transmission Association, Inc. ("Tri-State") to produce for *in camera* review 1) billing statements generated by Sherman & Howard, L.L.C. and presented to Tri-State, 2) the 2009 engagement letter between Sherman & Howard, L.L.C. and Tri-State, 3) the Finnerty documents, which include a letter from Jack Finnerty, a Director of Tri-State, to Kent Singer, legal counsel for Tri-State, and email communications involving Tri-State and its counsel about the letter, and 4) an email string about Cobb and Underwood's request for Tri-State's insurance policies.

Cobb and Underwood argue that since Tri-State has brought claims for breach of fiduciary duty against Cobb and Underwood, those claims, as well as Cobb and Underwood's defense that the claims are barred by the applicable statute of limitation, are at issue. They argue therefore that Tri-State has waived its attorney-client privilege with respect to documents

---

[1] A transcript of this hearing was filed May 1, 2013 [Doc. No. 165] (hereinafter "Transcript").

evidencing when Tri-State "knew or should have known that it had potential claims against Messrs. Cobb and Underwood." (Mot. at 7, 9.)

As the court understands the relationship between the parties, the Board of Directors of Tri-State is made up of individuals who are all also officers and/or directors of Tri-State's member rural public power districts. As a result, every director of Tri-State serves in what the parties refer to as a dual director capacity. (See Am. Counterclaims [Doc. No. 84] at 45.) This issue becomes significant when a member power district, represented by one of its directors who also serves as a Director for Tri-State maintains an adverse position from that taken by Tri-State. An example of such a situation is when a member power district disputes the rate imposed by Tri-State on the member for provision of electricity. It was just such a rate dispute between the rural power districts in Nebraska, collectively referred to as the Nebraska Power Supply Issues Group or "NPSIG," and Tri-State that was the genesis of the dispute in this case.

The narrow issue about which otherwise privileged information is sought in discovery by Cobb and Underwood concerns Tri-State's decision to bring a breach of fiduciary claim against only Mr. Underwood and Mr. Cobb and not the other three Nebraska dual directors involved in NPSIG and, in particular, when Tri-State learned the information upon which it bases the breach of fiduciary duty claims against the two. (Transcript at 69-70.) Specifically, Cobb and Underwood seek information about what Tri-State knew about Cobb and Underwood's alleged breach of fiduciary duty prior to August 23, 2009. (*Id*. at 70, 84.)

The documents submitted for *in camera* review are allegedly responsive to Cobb and Underwood's RPD Nos. 26 or 27. RFP 26 requests, "Produce each and every document

reflecting or concerning communications - not subject to a proper claim of attorney-client privilege or work product protection - relating to Tri-State's communications with its lawyers and other advisors regarding potential claims against Cobb and Underwood." RFP 27 requests, "Produce each and every document reflecting or concerning communications - not subject to a proper claim of attorney client privilege - relating or referring to the scope of Tri- State's retention or when Tri-State retained Robert Youle and Sherman & Howard to represent it in connection with the NPSIG members or their disputes with Tri-State."

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and locations of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Here, Tri-State has asserted the *in camera* documents contain attorney-client privileged information and has refused to produce them.

Jurisdiction in this case is premised upon diversity and therefore state law controls the determination of attorney-client privilege issues. In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations." *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009). The common-law attorney-client privilege has been codified in Colorado as section 13–90–107(1)(b) of the Colorado Revised Statutes, which states "[a]n attorney shall not be examined without the consent of his client as to any communication made by the client to him

or his advice given thereon in the course of professional employment." *Id*.; *See Mountain States Tel. & Tel. Co. v. DiFede*, 780 P.2d 533, 541 (Colo. 1989). The privilege only applies to communications under "circumstances giving rise to a reasonable expectation that the statements will be treated as confidential." *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001).

The attorney-client privilege is not an absolute privilege. *DiFede*, 780 P.2d at 542. A party, for example, may waive the protection of the privilege. This waiver is really a form of consent to disclosure. *Clark v. District Court*, 668 P.2d 3, 8 (Colo. 1983). Waiver must be supported by evidence showing that the privilege holder, by words or conduct, has expressly or impliedly forsaken its claim of confidentiality with respect to the information in question. The burden of proving waiver of the attorney-client privilege is on the party seeking to overcome the privilege, in this case Cobb and Underwood. *People v. Madera*, 112 P. 3d 688, 690 (Colo. 2005).

The Colorado Supreme Court has cautioned against the excessive application of the "in issue" exception to the attorney-client privilege, noting that the "general policy against invading the privacy of an attorney's course of preparation" is "well recognized and . . . essential to an orderly working of our system of legal procedure," and cautioning that exceptions to attorney-client privilege" are simply exceptions and that "the rule is that attorney-client communications are privileged and protected from discovery by opposing parties." *DiFede*, 780 P.2d at 543-44; *accord Madera*, 112 P.3d at 691-92. Consequently, *DiFede* adopted a three-prong test to determine whether there has been an implied waiver of the attorney-client privilege by putting a matter in issue: (1) when assertion of the privilege was a result of some

affirmative act, such as filing suit, by the asserting party, and (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case, and (3) application of the privilege denies the opposing party access to information vital to his defense. 780 P.2d at 543-44. Even where there has been an implied waiver of the privilege, the scope of the implied waiver must be carefully delineated. *Id*. at 691.

In a case with facts similar to this case, the Nebraska Supreme Court, in determining whether there had been a waiver of the lawyer-client privilege, stated

> All of these established exceptions to the rules of privilege have a common denominator; in each instance, the party asserting the privilege placed information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would have been manifestly unfair to the opposing party.

*League v. Vanice,* 374 N.W.2d 849, 856 (Neb. 1985). *League* is particularly instructive because the issue involved the statute of limitations defense, and the party asserting the attorney-client privilege contended that he "didn't know" when certain critical events happened. Tri-State, the party here asserting the privilege, brings the counterclaims and states that it did not know about the facts underlying Cobb and Underwood's alleged breach of fiduciary duty until revealed during discovery 2012. The *League* court held that by pleading facts necessary to sustain his causes of action against the defendant, Plaintiff League waived the lawyer-client privilege concerning those communications bearing upon League's knowledge of events or transactions relevant to his claims and relevant to the alleged bar of the statute of limitations. *Id.* The court said, "[a]ny other holding would be a triumph of form over substance." *Id.* The Colorado Supreme Court adopted this reasoning in *DiFede*. Additionally, the District Court for the

District of Colorado applied the same reasoning in *Alioto v. Hoiles,* Civil Action No. 04-cv-00438-JLK-MEH, 2007 WL 2298310 (D. Colo. August 7, 2007). District Judge John L. Kane held that, by claiming an agreement was unenforceable and asserting he was never advised about the fee agreement's compliance with applicable law, Defendant " 'injected his knowledge or lack of knowledge' of the agreement's enforceability into the case." *Id*. at \*6 (quoting *DiFede,* 780 P.2d at 544). Judge Kane held the party asserting the lack of knowledge should not be permitted to assert the attorney-client privilege "to frustrate proof of knowledge [potentially] negating the very foundation or condition necessary to prevail" on his claims. *Id.*

Tri-State argues that its billing statements, its engagement letter, all of the Finnerty documents, and the one email string are "irrelevant." (*See* "Defendant Tri-State's Response to Cobb and Underwood's Motion to Compel and Request for Hearing" [Doc. No. 152] ("Resp.").) Pursuant to Fed. R. Civ. P. 26, the documents would not be irrelevant if they contain information which is reasonably calculated to lead to the discovery of admissible evidence relevant to a claim or defense. If the court determines, after *in camera* review, that any of the documents submitted are relevant, the court must determine whether they are responsive to RFP 26 or 27. Both RFP 26 and 27 exclude from the request documents which are "subject to a proper claim of attorney client privilege." Therefore, to the extent the documents would otherwise be considered responsive but yet are otherwise privileged, the court must determine if the applicable privilege has been waived.

> *1.    February 17, 2009 Engagement Letter between Sherman & Howard and Tri-State (Priv. Log [Doc. No. 143-2] (hereinafter "Privilege Log") Entry # 95)*

The attorney-client privilege protects from discovery communications made in confidence between the client and the attorney. *EEOC v. Outback Steakhouse of Florida*, 251 F.R.D. 603, 610 (D. Colo. 2008). The Tenth Circuit has recognized that disclosing actual fee contracts has the potential for revealing confidential information along with unprotected fee information. *See In re Grand Jury Subpoenas*, 906 F.2d 1485, 1492 (10th Cir. 1990).

The court has reviewed *in camera* the engagement letter applicable to Sherman & Howard's representation of Tri-State in this litigation. First, the court finds the engagement letter is not responsive to RFP 26; however it is responsive to RFP 27. Certain portions of the letter also are relevant to this litigation under the very broad scope of Fed. R. Civ. P. 26(b)(1). The engagement letter contains a limited amount of privileged information because it reflects the lawyer's understanding of Tri-State's "motive in seeking representation" and some information which could be characterized as "litigation strategy." *See In re Gibco, Inc.*, 185 F.R.D. 296, 299 (D. Colo. 1997); *Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D. 632, 636 (D. Colo. 2012). The privileged information in this document does not, however, contain information that "through [Tri-State's] affirmative act, [Tri-State] put the protected information at issue by making it relevant to the case." *Defide*, 780 P.2d at 543-44. In other words, the privileged information contained in the engagement letter does not relate to the claims that Tri-State intentionally asserted against Cobb and Underwood for breach of fiduciary duty or to Cobb and Underwood's defense concerning the statute of limitations. Therefore, the attorney-client

privilege has not been waived as to the privileged information in this document. The remaining non-privileged information in the document is not relevant to facts at issue between Cobb, Underwood and Tri-State. Therefore, the court, after *in camera* review, denies Plaintiff's request that Tri-State be required to produce the engagement letter.

### 2. Billing Statements

An attorney generally may not refuse to answer questions about the identity of a client and fee arrangements. *Lee v. State Farm Mut. Auto. Ins. Co.,* 249 F.R.D. 662, 684 (D. Colo. 2008) In general, billing records are not accorded privileged status unless specific entries contain privileged communications. For instance, information on an attorney's billing statement which shows the fee amount, the general nature of the services performed, and the case on which the services were performed is not considered privileged. *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974). However, billing statement entries which reflect the client's motive in seeking representation, litigation strategy, or the specific nature of services provided, such as researching particular areas of the law, are privileged. *See In re Gibco, Inc*., 185 F.R.D.at 299; *Roe*, 281 F.R.D. at 636.

The court reviewed *in camera* billing statements containing individual time keeping entries between Sherman & Howard and Tri-State from July 21, 2008 to August 20, 2009.[2] The billing entries were, almost without exception, very detailed and contained the specific nature of services provided, such as researching particular areas of the law. Each entry in the billing

---

[2] August 20, 2009 was the last date for a billing entry before August 23, 2009; *i.e.*, there were no billing entries for August 21, 22 or 23, 2009.

statements contained privileged information which reveals a great deal of information about litigation strategy. No billing entries were responsive to RFP 26. The first entry which could be said to be marginally responsive to RFP 27 occurred in February, 2009. However, none of the billing entries contained privileged information that "through [Tri-State's] affirmative act, [Tri-State] put the protected information at issue by making it relevant to the case." *Defide*, 780 P.2d at 543-44. Specifically, again, after *in camera* review the court finds that the privileged information in the billing records for which Tri-State seeks protection and which is responsive to RFP 27, does not relate to the claims that Tri-State intentionally asserted against Cobb and Underwood for breach of fiduciary duty or their defense concerning the statute of limitations for any entry prior to August 23, 2009.

Therefore, the court denies Plaintiff's request that Tri-State be required to produce the billing records from July 21, 2008 to August 23, 2009.

> *3.    Finnerty Letter and other documents (Privilege Log Entries # 199, 211, 212, 213 ) and an Email string dated June 24, 2009 between Kent Singer and Hub Thompson which is not included on the Privilege Log.*

As noted, the attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. The "[a]ttorney-client privilege exists to protect not only the giving of professional advice to those who can act on it *but also the giving of information to the lawyer* to enable him to give sound and informed advice." *Upjohn v. United States*, 449 U.S. 383, 390 (1981) (emphasis added). *Upjohn* involved communications made by Upjohn employees to counsel for Upjohn acting as such, in order to secure legal advice from counsel. The court held these communications to be

privileged. The Finnerty letter is a communication from a Director of Tri-State seeking legal advice from counsel for Tri-State on an issue concerning Tri-State. Although counsel ultimately declined to provide legal advice, this communication is nonetheless privileged pursuant to *Upjohn*. The related emails are from Tri-State to Tri-State's counsel asking for legal advice concerning the handling of the Finnerty letter. Clearly, the emails are subject to the attorney-client privilege. The court finds the Finnerty letter is responsive to RFP 26 and is relevant pursuant to the standards of Fed. R. Civ. P. 26.

The court finds that as to the Finnerty letter, as opposed to the remaining Finnerty documents, Tri-State put the privileged information in issue when it brought claims for breach of fiduciary duty against Cobb and Underwood and that timing of the letter is relevant, in the broad sense envisioned by Rule 26, to the statute of limitations defense. However, in this case, application of the privilege will not deny the opposing parties, Cobb and Underwood, access to information vital to their defense because the factual information in the letter is contained in the minutes of various board meetings of Tri-State, including the approximate timing of Mr. Finnerty's concern about the role of Mr. Underwood as the Director of a Nebraska power district affiliated with NPSIG and his simultaneous role as Director and Officer of Tri-State. There is nothing in the letter, including the time period of Mr. Finnerty's concerns, that is not produced elsewhere in non-privileged documents. Therefore, the information in the privileged letter is not

11

vital to the defense, and the court will deny Plaintiff's request for production of the Finnerty letter.[3]

As to the emails which were produced as part of the Finnerty documents, these emails are not responsive to RFP 26 because they do not contain "communications with its lawyers and other advisors regarding potential claims against Cobb and Underwood," but rather relate only to procedural matters concerning the Finnerty letter. Therefore, the court will deny Plaintiff's request for production of the Finnerty documents as noted on the Privilege Log as items 199, 211, 212, and 213 (IC005-012).

Also included in the *in camera* review documents at IC0 13-14 is a string of emails between Kent Singer and Hub Thompson, all dated June 24, 2009. These documents are not listed on the March 15, 2013 Privilege Log. This email string is responsive to RFP 26 and is relevant to the issues in the case. It appears that the content of the emails, while between the Chairman of Tri-State, Hub Thompson and Tri-State's counsel, Kent Singer, does <u>not</u> fit the definition of privileged communications because it involves neither the seeking nor the providing of legal advice but rather concerns the accurate drafting of the June 2009 Board of Directors meeting minutes. Therefore, it does not fall within the ambit of attorney-client communications.

---

[3] It is unclear whether the Finnerty letter may have already been produced to Cobb and Underwood. However, the letter was attached to several emails included as the Finnerty documents so was addressed by the court in this context.

Further, under Federal Rule 26(b)(5), when a party withholds information otherwise discoverable by claiming attorney-client privilege, that party must "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Privilege logs are only applicable when the responding party to a discovery request acknowledges that certain evidence is responsive to the request but the responder nonetheless withholds production because the evidence is protected by a recognized privilege. *Tinley v. Poly-Triplex Technologies, Inc*., Civil Action No. 07-cv-01136-WYD-KMT, 2008 WL 732590, at *1 (D. Colo. March 18,2008). Failure to assert a privilege properly on a privilege log results in a waiver of the claim of privilege. *Lee v. State Farm Mut. Auto. Ins. Co.*, 249 F.R.D. 662, 683 (D. Colo. 2008). *See also Atteberry v. Longmont United Hosp.,* 221 F.R.D. 644, 649 (D. Colo. 2004) (failure to produce a privilege log or production of an inadequate privilege log may be deemed a waiver of the privilege asserted); *Pham v. Hartford Fire Insurance Company*, 193 F.R.D. 659, 662 (D. Colo. 2000) (same). The Colorado rule requiring a privilege log (Colo. R. Civ. P. 26(b)(5)) is patterned after the federal rule, and the law of waiver for failure to comply with this rule applies whether under Colorado or federal law. *See Alcon v. Spicer*, 113 P.3d 735, 741-42 (Colo. 2005) ("when a party wishes to assert privilege in response to a discovery request he or she must notify the party seeking disclosure by providing a privilege log identifying the documents withheld and explaining the privilege claim.").

Federal Rule of Evidence 502(b) protects from waiver a privileged document that has been disclosed inadvertently. *See* Fed.R.Evid. 502(b). First, the documents at issue have not

technically been disclosed to the opposing party yet; they have been withheld on a claim of privilege and submitted for court review. Second, the disclosure to the court and the failure to include the documents on the Privilege Log is not inadvertent. Tri-State produced its revised Privilege Log on March 15, 2013, and Cobb and Underwood filed their Motion to Compel two days later. Approximately one month later Tri-State produced 80 pages for *in camera* review. If the documents are responsive to Cobb and Underwood's discovery requests, their placement on the Privilege Log is required. Therefore, failure to list these email communications on its privilege log cannot be characterized as inadvertent. Therefore, Tri-State has waived any privilege it might have asserted.

Therefore the court orders Tri-State to produce the two documents marked IC013 and IC014, the June 24, 2009 email string between Singer and Thompson regarding Mr. Thompson's request that the June 2009 Board meeting minutes of Tri-State as originally drafted by Mr. Singer be revised.

### *4.     May 2009 Email not included on the Privilege Log.*

The court has reviewed *in camera* an email string with the first entry dated May 22, 2009 from Kenneth Reif to Hub Thompson with a copy to Ken Anderson and the responsive email dated May 23, 2009 from Hub Thompson to Kenneth Reif. First, the court finds the emails to be responsive to RFP 26 and relevant to this litigation under the broad scope of Fed. R. Civ. P. 26(b)(1). While at least a portion of these communications would be subject to attorney-client privilege, they were not properly disclosed on the March 15, 2013 Privilege Log, but were submitted to the court with identification number IC015. For the same reasons as set forth in

more detail concerning IC013 and IC014, Tri-State has waived any privilege it might have asserted as to IC015.  Therefore, the court now orders the production of IC015 to Cobb and Underwood

It is therefore **ORDERED**, as to those matters taken under advisement after the April 10, 2013 hearing,

"Cobb and Underwood's Motion to Compel and Request for Hearing" [Doc No. 143] is **GRANTED IN PART AND DENIED IN PART**.

Regarding *in camera* reviewed Doc. Nos. IC001 - IC080:

The Motion is **GRANTED** as to Documents No. IC013, IC014 and IC015.  Tri-State shall produce these three documents to Cobb and Underwood on or before May 17, 2013.

The Motion is **DENIED** as to all remaining documents.

Dated this 13th day of May, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge