**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 10-cv-02349-WJM-KMT

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT,
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION, and
ROOSEVELT PUBLIC POWER DISTRICT,

      Plaintiffs,

v.

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

      Defendant.
_____

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

      Counterclaim Plaintiff,

v.

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT, and
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION,

      Counterclaim Defendants.
_____

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

      Third-Party Plaintiff,

v.

WAYNE COBB,
RYAN REIBER,
ROLLAND SKINNER, and
JERRY UNDERWOOD,

      Third-Party Defendants.

_____

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS
_____

In this diversity action, Defendant and Counterclaim Plaintiff Tri-State Generation

and Transmission Association, Inc. ("Tri-State") has filed Amended Counterclaims against

Plaintiffs Chimney Rock Public Power District ("Chimney Rock"), Midwest Electric

Cooperative Corporation ("Midwest"), Northwest Rural Public Power District ("Northwest"),

and Panhandle Rural Electric Membership Association ("PREMA").  (ECF No. 84.)  Tri-

State also brings claims as a Third-Party Plaintiff against four individuals not previously

involved in this action, Wayne Cobb, Jerry Underwood, Rolland Skinner, and Ryan Reiber

(collectively "Third-Party Defendants").[1]  (*Id.*)  This matter is before the Court on the Third-

Party Defendants' Motions to Dismiss Tri-State's Fifth and Sixth Counterclaims

("Motions"), which are the only claims asserted against them.  (ECF Nos. 113 & 117.)  For

the reasons set forth below, the Motions are granted in part and denied in part.

## I.  BACKGROUND

The relevant facts, as pled by Tri-State, are as follows.  Tri-State is a Colorado

corporation, formed by twenty-six electrical power distribution cooperatives and public

power districts in the states of Colorado, Nebraska, and Wyoming for the purposes of

_____

[1] Although all of Tri-State's claims are denominated "Counterclaims" in its pleadings, Tri-State's Fifth Counterclaim is in fact a third-party claim asserted against Cobb and Underwood, who were not previously parties to the action.  (*See* ECF No. 84 at 57-58.)  Similarly, Tri-State's Sixth Counterclaim is asserted against third parties Reiber and Skinner, in addition to Plaintiffs Chimney Rock, Midwest, Northwest, and PREMA.  (*Id.* at 58.)  The Court will refer to Tri-State's Fifth and Sixth Counterclaims as pled, but notes that the claims against the Third-Party Defendants are more properly denominated "Third-Party Claims" pursuant to Federal Rule of Civil Procedure 14.

furnishing long-term wholesale power and energy to the member cooperatives and districts, which in turn provide power to consumers in their separate geographical areas. (ECF No. 84 ¶¶ 10, 16.)  Plaintiffs Chimney Rock Public Power District ("Chimney Rock"), Midwest Electric Cooperative Corporation ("Midwest"), Northwest Rural Public Power District ("Northwest"), Panhandle Rural Electric Membership Association ("PREMA"), and Roosevelt Public Power District (collectively "Plaintiffs") are all members of Tri-State operating in Nebraska, and each has a contract with Tri-State for the provision of wholesale electric service.  (*Id.* ¶¶ 2-5, 17.)

On September 28, 2009, Plaintiffs filed their Complaint in the District of Nebraska against Tri-State and various individual defendants[2], alleging breach of contract, breach of fiduciary duty, and related claims arising from a dispute over the rates at which Tri-State sold electric power to Plaintiffs.  (ECF No. 1-2.)  After the District of Nebraska granted a Motion to Change Venue under 28 U.S.C. § 1404(a), the case was transferred to this Court on September 24, 2010.  (ECF Nos. 1-71, 1-77.)

After the Court issued an Order granting in part and denying in part Tri-State's Motion to Dismiss (ECF No. 31), Tri-State filed its Answer on February 15, 2012, which included Counterclaims against Plaintiffs Chimney Rock, Midwest, Northwest, and PREMA.  (ECF No. 39.)  Tri-State's Counterclaims arise out of Plaintiffs' formation in 2007 of the Nebraska Power Supply Interest Group ("NPSIG"), through which they sought to breach their contracts with Tri-State, pressured Tri-State to change its pricing rate, and planned and filed the instant lawsuit.  (ECF No. 84 ¶¶ 34-35.)  During discovery, Tri-State

---

[2] The individual defendants were subsequently dismissed from the action.  (*See* ECF Nos. 1-26, 146.)

obtained information alerting it to additional claims, and consequently Tri-State filed a

Motion to Amend the Scheduling Order and to Assert Additional Counterclaims on August

23, 2012.  (ECF No. 65.)

Magistrate Judge Kathleen M. Tafoya granted Tri-State's Motion to Amend (ECF

No. 83), and Tri-State filed its Amended Counterclaims on December 3, 2012, joining the

Third-Party Defendants to the action.  (ECF No. 84.)  The Amended Counterclaims

included a new Fifth Counterclaim for breach of fiduciary duty against Wayne Cobb, a

member of the board of directors of Northwest, and Jerry Underwood, a member of the

board of directors of PREMA, both of whom were members of Tri-State's board of

directors at all relevant times.  (*Id.* ¶¶ 26-27, 47, 53, 87-91.)  Tri-State also added its Sixth

Counterclaim for aiding and abetting Cobb's and Underwood's breach of fiduciary duty,

asserted against Plaintiffs Chimney Rock, Midwest, Northwest, and PREMA, as well as

against Rolland Skinner, an employee of Northwest, and Ryan Reiber, an employee of

PREMA.  (*Id.* ¶¶ 8-9, 92-95.)

On December 21, 2012, Cobb and Underwood filed their Motion to Dismiss the

Fifth Counterclaim for Relief pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF

No. 113.)  On December 26, 2012, Reiber and Skinner filed their Motion to Dismiss the

Sixth Counterclaim.  (ECF No. 117.)  Tri-State filed its Responses to the Motions on

January 16, 2013.  (ECF Nos. 122 & 123.)  On January 30, 2013, Cobb and Underwood

filed their Reply (ECF No. 133), and Reiber and Skinner's Reply (ECF No. 134) was filed

on February 1, 2013.

## II.  LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the

sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla*., 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).  The "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).  This requirement of plausibility "serves not only to weed out claims that do not have a reasonable prospect of success, [but also to] provide fair notice to defendants of the actual grounds of the claim against them."  *Id.*

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

### III.  ANALYSIS

The Third-Party Defendants make four arguments that the Court should dismiss all or part of Tri-State's claims against them:  (1) the Third-Party Defendants' allegedly tortious actions are protected by their First Amendment right to petition; (2) Tri-State fails to state a claim for breach of fiduciary duty because it fails to sufficiently allege damages resulting from the breach; (3) the Third-Party Defendants were improperly joined to this action; and (4) Cobb and Skinner are immune from suit under the Nebraska Tort Claims

Act.  (ECF Nos. 113 & 117.)  The Court will discuss each argument in turn.

**A.      Right to Petition**

The Third-Party Defendants' Motions[3] contend that Tri-State's claims against them

cannot succeed because their allegedly tortious actions are protected by the First

Amendment's right to petition.  (ECF No. 113 at 5-8.)  Cobb and Underwood's Motion

contends that Tri-State effectively claims that they "breached their fiduciary duties by

participating in the planning for this lawsuit and by the fact that NPSIG ultimately brought

this lawsuit."  (*Id.* at 5.)  Because the First Amendment protects the rights of individuals to

appeal to the courts, the Motions argue that their actions in filing this case are

constitutionally protected.  (*Id.* (citing *Scott v. Hern*, 216 F.3d 897, 914 (10th Cir. 2000)).)

Tri-State agrees that the First Amendment's protection of the right to petition

extends to "shield a party from [tort] liability if the underlying claim being brought impairs

or chills the other party's free access to the courts."  (ECF No. 122 at 5 (citing *Pacific Gas

& Elec. Co. v. Bear Sterns & Co.*, 791 P.2d 587, 595-96 (Cal. 1990)).)  However, Tri-State

contends that its claims do not impair or chill the Third-Party Defendants' access to the

courts.  (*Id.* at 6.)  Rather, Tri-State claims, the breach of fiduciary duty alleged in this

case is based upon Cobb's and Underwood's failure to disclose information concerning

NPSIG's actions, and their breach of loyalty in working with NPSIG against Tri-State's

interests—not, as the Third-Party Defendants claim, for filing the lawsuit itself.  (*Id.*)

---

[3] While Cobb and Underwood's Motion discusses the First Amendment argument in some depth, Reiber and Skinner's Motion does not, arguing simply that if the claim for breach of fiduciary duty against Cobb and Underwood fails as a matter of law, so must the claim for aiding and abetting that breach.  (ECF No. 117 at 5.)  However, Reiber and Skinner also assert in their Response that the right to petition protects Cobb's and Underwood's actions.  (ECF No. 134 at 2-3.)  Accordingly, the Court will discuss the issue as if both Motions argued it in full.

After reviewing the Fifth and Sixth Amended Counterclaims, the Court agrees with Tri-State that the claims do not penalize Cobb's and Underwood's litigation activity or chill the Third-Party Defendants' access to the courts.  While NPSIG's activities resulted in the instant lawsuit, and Cobb and Underwood's allegedly tortious participation in NPSIG surely involved preparation for and discussion of the lawsuit, Tri-State does not allege that Cobb and Underwood breached their fiduciary duty by filing it.[4]  Rather, the Amended Counterclaims repeatedly allege that Cobb and Underwood failed to disclose NPSIG's activities to Tri-State while remaining on its board of directors, claiming that their failure to disclose violated their fiduciary duties of disclosure and good faith.  (*See* ECF No. 84 ¶¶ 37, 39, 40, 46, 49, 54, 57, 59, 62-64.)  Tri-State also alleges that Cobb and Underwood breached their duty of loyalty by agreeing to serve as voting members of NPSIG despite their preexisting fiduciary duties to Tri-State, and by participating in NPSIG's activities against Tri-State's interests.  (*Id.* ¶¶ 35-36, 52-53.)

Because the Counterclaims against the Third-Party Defendants do not seek relief for the filing of a lawsuit, they do not implicate the First Amendment.  (*See id.* ¶¶ 90, 93.) Similarly, the allegations against Skinner and Reiber for aiding and abetting such a breach of fiduciary duty do not involve their First Amendment right to petition; Tri-State merely alleges that Skinner and Reiber "actively encouraged" and assisted Cobb and Underwood to breach their fiduciary duties.  (*See id.* ¶¶ 40, 63, 93-94.)  Accordingly, the Court finds that the claims made against the Third-Party Defendants do not violate their

---

[4] Further, the Court notes that although Northwest and PREMA are both Plaintiffs in this action, neither Cobb nor Underwood have filed any claims or otherwise sought judicial recourse in this matter; thus, the contention that Tri-State's claims have impaired or chilled their right to seek such recourse is purely speculative.

rights to petition protected by the First Amendment.

**B.    Joinder**

The Third-Party Defendants also argue that Tri-State has improperly joined them

to this action as "Counterclaim Defendants" when it filed its Amended Counterclaims, and

that the Court should decline to permit them to be joined under Rule 20.[5]

When Tri-State sought to add its claims against the Third-Party Defendants, it filed

a Motion to Amend its Counterclaims.  (ECF No. 65.)  In the Order Granting the Motion to

Amend, the Magistrate Judge discussed the propriety of the proposed amendment under

Federal Rules of Civil Procedure 16(b) (regarding modification of the scheduling order for

good cause to extend the deadline to amend pleadings) and 15(a) (regarding amendment

of the pleadings when justice so requires).  (ECF No. 83 at 3-6.)  The Magistrate Judge

found that good cause and the interests of justice weighed in favor of permitting the

amendment.  (*Id.*)

The Third-Party Defendants now present three other procedural rules under which

their allegedly improper joinder to this case should be considered: Rule 19(a) regarding

compulsory joinder of required parties, Rule 20 regarding permissive joinder of parties,

and Rule 14(a) regarding third-party impleader by a defendant.  (ECF No. 113 at 1 n.1,

117 at 11-15.)  They assert that because they are not required parties under Rule 19,

their joinder is governed by Rule 20, under which a court has discretion in whether to

permit joinder of a party where such joinder causes undue prejudice.  (ECF No. 117 at

---

[5]  While Reiber and Skinner's Motion devotes four pages to this argument, Cobb and Underwood mention the procedural irregularity only briefly in a footnote.  (ECF No. 113 at 1 n.1; 117 at 11-15.)  However, because both Motions raise the issue, the Court will discuss it as if it were argued jointly by the Third-Party Defendants.

13-15.)  The Third-Party Defendants also assert that the claims against them should have been evaluated under Rule 14(a) as third-party claims, and that because Tri-State does not assert that the Third-Party Defendants "are liable for all or part of NPSIG's claims against it, they are not properly labeled third-party claims."  (ECF No. 113 at 1 n.1.)

Tri-State does not contest that the Third-Party Defendants are not subject to compulsory joinder as required parties under Rule 19, instead contending that the Third-Party Defendants were properly joined under Rule 13(h) (governing counterclaims) and 20(a)(2) (governing permissive joinder of a defendant).  (*See* ECF No. 123 at 9-10.)  Tri-State further argues that the joinder of the Third-Party Defendants will not cause them undue prejudice, and therefore the Court should permit their joinder.  (*Id.* at 10-14.)

Because Cobb, Underwood, Reiber, and Skinner were not parties to this action prior to their inclusion in the Amended Counterclaims, the question of whether they should be added to this action is governed by Rule 14.  Under Rule 14(a)(1), a defendant seeking to join "a nonparty who is or may be liable to it for all or part of the claim against it" must file a claim against the third party within 14 days of filing an answer, or obtain leave of court to do so.  The Amended Counterclaims include assertions that the Counterclaim Defendants and Third-Party Defendants may be liable based upon any entry of judgment in favor of Plaintiffs against Tri-State, and that Tri-State merits an award of costs and attorneys' fees, from which it can reasonably be inferred that Tri-State seeks to hold the Third-Party Defendants liable "for all or part of the [Plaintiffs'] claim" against Tri-State.  (*See* ECF No. 84 at 59-60.)  Thus, Tri-State's claims against the Third-Party Defendants are properly considered third-party claims under Rule 14(a).

Additionally, as required by Rule 14(a)(1), Tri-State here sought the Court's leave to add its claims against the Third-Party Defendants.  (ECF No. 65.)  Such leave was then granted by the Magistrate Judge.  (ECF No. 83.)  Plaintiffs subsequently objected to the Magistrate Judge's Order and moved to vacate it (ECF No. 100), but finding no reversible error, the Court denied the motion (ECF No. 247).  The Court declines to revisit that Order further, and holds that the Third-Party Defendants were properly joined under Rule 14. *See Farmers & Merchants Mut. Fire Ins. Co. v. Pulliam*, 481 F.2d 670, 673 (10th Cir. 1973) (holding that the granting of leave for a defendant to prosecute a third party proceeding under Rule 14 is a discretionary decision by the trial court).

However, because the Third-Party Defendants were not yet parties when leave to amend the Counterclaims was granted, the Magistrate Judge did not have occasion in her Order to consider the Third-Party Defendants' arguments regarding unfair prejudice resulting from permissive joinder under Rule 20.  On that issue, the Third-Party Defendants argue that, because this litigation has been pending for more than three years and a great deal of discovery has already taken place, it would be unfairly prejudicial and unduly expensive to require the Third-Party Defendants to enter the case at this late date, when they are implicated in only a small part of this complex litigation and Tri-State's claim against them is "tangential, at best."  (ECF No. 117 at 14-15.)  The Third-Party Defendants do not seem to contest that Tri-State has met the basic requirements of Rule 20 permissive joinder—that the claims arise out of the same transaction or occurrence and there is some common question of law or fact—but suggest that they should not be joined because such joinder could violate "principles of fundamental fairness or cause [them] undue prejudice".  (*Id.* at 13 (citing *Third Degree*

10

*Films, Inc. v. Doe*, 2012 U.S. Dist. LEXIS 129762 at *8 (D. Colo. Sept. 12, 2012)).)

Considering that the purpose of third-party practice under Rule 14 is "to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits," and the principle that "[t]he rule should be liberally construed to effectuate its intended purposes," the Court finds that any prejudice to the Third-Party Defendants does not require the Court to reject their joinder as parties to this case.  *See United States v. Acord*, 209 F.2d 709, 712 (10th Cir. 1954), *cert. denied* 347 U.S. 975 (1954).  Although the litigation has indeed been pending for nearly three years, and Tri-State's claims against the Third-Party Defendants are, as asserted, a "small piece" of a much larger litigation, such factors do not weigh in favor of rejecting joinder and requiring Tri-State to litigate its claims piecemeal.  Such a finding would benefit neither the goals of judicial economy encapsulated in the Rules, nor would it seem to reduce the costs the Third-Party Defendants would have to bear in defending the claims.

Further, as Tri-State points out, although the Third-Party Defendants were not previously parties to the case, they were participants in discovery through their relationships to NPSIG, Northwest, and PREMA, as well as the events at issue in the larger claims in this case.  (*See* ECF Nos. 123 at 12-13; 83 at 5.)  Tri-State has served discovery requests on all four Third-Party Defendants, and Northwest and PREMA have identified Reiber and Skinner as Rule 30(b)(6) deponents on numerous issues in Plaintiffs' claims against Tri-State.  (*Id.*)  It would therefore be disingenuous for the Third-Party Defendants to claim ignorance or surprise with regard to the existence of this litigation or the factual bases of Tri-State's claims against them.

11

Accordingly, the Court finds that the joinder of the Third-Party Defendants to this lawsuit under Rule 14 is not unduly prejudicial, and therefore permits such joinder pursuant to Rule 20.

## C.   Damages

The Third-Party Defendants next argue that Tri-State fails to state a claim for breach of fiduciary duty and for aiding and abetting that breach, because the Amended Counterclaims are facially deficient in that they fail to allege damages.  (ECF Nos. 113 at 8-9, 117 at 6-7.)  The Motions argue that this failure is fatal to the claims for two reasons:[6] (1) damages are an element of a claim for breach of fiduciary duty, and (2) the failure to sufficiently allege damages violates the pleading standards in *Twombly* and *Iqbal*.  (*Id.* (citing *Twombly*, 550 U.S. 544; *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).)

On review of the Amended Counterclaims, the Court notes that they do, in fact, contain allegations that the Third-Party Defendants' actions caused Tri-State to suffer damages.  (*See* ECF No. 84 ¶¶ 91, 95.)  Under *Iqbal*, a pleading is sufficient where it contains sufficient facts permitting a "reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  As discussed above, Tri-State's allegations permit the reasonable inference that the Third-Party Defendants' allegedly tortious actions in breaching their fiduciary duty or aiding such a breach resulted in costs

---

[6] Cobb and Underwood's Motion also makes a third argument that Tri-State's claims fail because "the only conceivable damage[s]" flowing from the breach of fiduciary duty are Tri-State's legal costs in having to respond to the instant lawsuit, and such damages are not compensable because the filing of the lawsuit is protected under the First Amendment right to petition.  (ECF No. 113 at 8-9.)  As the Court has found that the First Amendment does not apply to Tri-State's claims against the Third-Party Defendants, the Court need not address this argument.

and expenses related to the litigation brought by Plaintiffs against Tri-State.  Accordingly, Tri-State has pled that damages exist as a result of the breach of fiduciary duty, which meets Tri-State's obligations to plead damages as a required element to state a claim for such a breach and for aiding and abetting that breach.

However, Tri-State does not specify in its pleading the source or amount of the damages attributable to the Third-Party Defendants, or the theory of causation under which they arise.  (*See id.* ¶¶ 91, 95.)  Under *Twombly* and its progeny, a complaint must not only allege sufficient facts to find that, "if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief," but must also "provide fair notice to defendants of the actual grounds of the claim against them."  *Robbins*, 519 F.3d at 1247-48.  Tri-State contends that its damages could include not only attorney's fees, costs, and losses resulting directly from the litigation brought by Plaintiffs against Tri-State, but also the resources fruitlessly expended in attempting to resolve Plaintiffs' disputes with Tri-State when Plaintiffs intended to file this lawsuit.  (ECF No. 122 at 8-9.)  However, as Tri-State admits, it did not include such statements in its pleadings.  (*Id.* at 9 n.3.)

If Tri-State's Amended Counterclaims were to stand alone, outside the context of the rest of this case, their cursory statement of damages may not suffice under *Twombly* to give the Third-Party Defendants notice of the basis for Tri-State's claims for relief.  However, the Court is not faced with such a hypothetical situation here; rather, the Amended Counterclaims exist within the context of a multitude of information and numerous documents regarding the factual and strategic underpinnings of the parties' various claims, exchanged between the parties over an extended period of time.  Tri-State's Responses to the Motions lay out detailed assertions establishing their theory of

damages.  (*See* ECF No. 122 at 8-9.)  To require Tri-State to file Second Amended Counterclaims simply to include in the pleadings these assertions, of which the Third-Party Defendants are already aware, would be to prize form over substance and needlessly delay an already lengthy litigation.

Therefore, the Court finds that Tri-State's Amended Counterclaims, read in conjunction with the other information pled and exchanged over the course of this complex and protracted litigation, sufficiently provides the Third-Party Defendants with notice of Tri-State's theory of damages.  Accordingly, the Court declines to dismiss the claims against the Third-Party Defendants on this basis.

**D.      Nebraska Tort Claims Act**

Finally, the Motions argue that because Cobb and Skinner[7] committed their allegedly tortious acts in their capacities as employees of a Nebraska political subdivision, they are immune from suit under the Nebraska Political Subdivisions Tort Claims Act (the "Act"), codified in Nebraska Revised Statutes §§ 13-901 to 13-928.  (ECF Nos. 113 at 9-15; 117 at 7-11.)  Tri-State responds that Colorado law, not Nebraska law, applies to the claims, and even under Nebraska law, the Act does not apply because Tri-State's claims are not against Cobb and Skinner in their official capacities, and because the provisions of the Act do not immunize Cobb and Skinner from suit.  (ECF Nos. 122 at 10-15; 123 at 6-8.)  The Court will consider each argument in turn.

---

[7]  Although these arguments appear in both Motions, they apply only to Third-Party Defendants Cobb and Skinner, because unlike Underwood and Reiber (employed by PREMA, a corporation), Cobb and Skinner are employees of Northwest, a political subdivision of the state of Nebraska and a public entity falling under the scope of the Act.  (*See* ECF Nos. 84 ¶ 4; 113 at 10.)

1.    Choice of Law

Although this Court sits in the District of Colorado, the District of Nebraska is the forum in this case because "when a district court grants a venue change pursuant to 28 U.S.C. § 1404, the transferee court is obligated to apply the law of the state in which the transferor court sits." *Benne v. Int'l Bus. Machs. Corp.*, 87 F.3d 419, 423-24 (10th Cir. 1996) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 633-34).  This principle requires a court to "ensure that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." *Van Dusen*, 376 U.S. at 638.  Accordingly, because Plaintiffs filed this case in the District of Nebraska, this Court sits as if it were located in that District for the purposes of this suit, and thus it must apply Nebraska choice of law principles.  *See Schreiber v. Allis-Chalmers Corp.*, 611 F.2d 790, 792 (10th Cir. 1979).

Where a claim is brought in Nebraska regarding the internal governance of a corporation, Nebraska applies the "internal affairs doctrine," applying to such a claim "the local law of the state of incorporation . . . except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties." *Johnson v. Johnson*, 720 N.W. 2d 20, 28 (Neb. 2006) (applying Rest. 2d Conflict of Laws § 302 (1971)).  Tri-State's claims against the Third-Party Defendants are based upon an alleged breach of fiduciary duty by members of the board of directors of Tri-State, which is a Colorado corporation.  Thus, the Court finds that under Nebraska choice of law principles, Colorado law applies to the claim for breach of

fiduciary duty, as well as the derivative claim for aiding and abetting that breach.[8]

Because Colorado law applies to its fiduciary duty claims, Tri-State argues that Nebraska immunity law is inapplicable, citing Colorado Court of Appeals case law holding that "where the injured party is a citizen of this state, injured in this state and sues in the courts of this state, there is no immunity, by law or as a matter of comity, covering a sister state activities in this state." *Peterson v. Texas*, 635 P.2d 241, 243 (Colo. App. 1981).

In *Peterson*, the Colorado Court of Appeals declined to grant immunity to an agent of the State of Texas where two juveniles the agent was supervising in Colorado as part of a Texas juvenile rehabilitation program stole the plaintiff's vehicle and personal property. *Id.* In determining that Texas governmental immunity was inapplicable, *Peterson* cited *Nevada v. Hall*, 440 U.S. 410 (1979), a Supreme Court case holding that a state may be sued in the courts of another state because a state's sovereign immunity "ends at the state boundary," and thus does not protect a foreign state where it is sued "in another sovereign's courts." *Id.* at 242 (citing *Hall*, 440 U.S. at 415-16).

The instant case, like *Peterson*, involves allegedly tortious actions committed in Colorado against a citizen of Colorado. However, unlike *Peterson*, the case is not brought in the Colorado courts; rather, as discussed above, the case was brought in the District of Nebraska, and Nebraska is the forum state. Thus, the reasoning of *Peterson*, borrowed from *Nevada v. Hall*, is inapplicable. Here, while the alleged tort was committed outside the forum state of Nebraska, Cobb and Skinner assert immunity under

---

[8]  The Third-Party Defendants appear implicitly to agree with this conclusion, as their Motions cite Colorado law in arguing that Tri-State fails to plead damages as a required element in its claims.  (*See* ECF No. 117 at 5 (citing *Nelson v. Elway*, 971 P.2d 245, 249-50 (Colo. App. 1998)); *see also* ECF No. 133 at 4-5.)

the forum state's laws.  Even where Colorado law is applicable to a tort, *Peterson*—a

Colorado case—does not invalidate Nebraska's governmental immunity when the case is

brought in a Nebraska forum.  To hold otherwise would permit Tri-State to receive the

windfall benefit of a change in state law when it moved to change the venue, a result

disapproved by the Supreme Court.  *See Van Dusen*, 376 U.S. at 638.

Furthermore, as Cobb and Underwood argue in their Reply, the issue of a state's

governmental immunity should be governed by Nebraska law because the internal affairs

doctrine provides for the "unusual case" in which there is a "particular issue"—here,

immunity—to which another state has a particularly "significant relationship", and they

argue that the same result would be reached by applying the principles of comity.  (ECF

No. 133 at 8-13.)  As a question of conflict of laws, then, Nebraska law should apply to

the question of governmental immunity.  (*Id.*)  The Court agrees that the question of a

public entity's immunity from suit is undoubtedly a particular issue to which the state

claiming immunity has the most significant relationship.[9]  Accordingly, the Court finds

*Peterson* inapplicable, and holds that Nebraska law applies to the issue of governmental

immunity here.

2.    Governmental Immunity

The stated purpose of the Nebraska Political Subdivisions Tort Claims Act is to

---

[9]  Tri-State cites this Court's previous Order holding that Colorado law applies to the
contract disputes in Plaintiffs' claims against Tri-State (ECF No. 31 at 10-11), arguing that the
Court there determined that Colorado has a more significant relationship to the occurrence and
the parties.  (ECF No. 123 at 8.)  The Court is not persuaded by this argument, as it not only
ignores the distinction between Plaintiffs' contractual claim with an explicit choice of law
provision and Tri-State's separate tort claim at issue here, but more importantly, such argument
fails to recognize that the "particular issue" of immunity was not before the Court when it issued
its prior Order.

ensure that "no political subdivision of the State of Nebraska shall be liable for the torts of its officers, agents, or employees, and that no suit shall be maintained against such political subdivision or its officers, agents, or employees on any tort claim except to the extent, and only to the extent, provided by the [Act]."  Neb. Rev. Stat. § 13-902.  The Act applies to claims for damages "caused by the negligent or wrongful act or omission of any employee of the political subdivision, while acting within the scope of his or her office or employment".  *Id.* § 13-903(4).

The Act "allows a limited waiver of a political subdivision's sovereign immunity. This waiver is limited by specifically delineating claims that are exempt from being brought against a political subdivision" or its employees.  *Stonacek v. City of Lincoln*, 782 N.W.2d 900, 907 (Neb. 2010); Neb. Rev. Stat. §§ 13–910(1)-(12).  These exceptions, under which a political subdivision is immune from suit, include claims for intentional torts based in "misrepresentation, deceit, or interference with contract rights," and claims for torts committed while a political subdivision's employee was engaged in a "discretionary function".  Neb. Rev. Stat. §§ 13-910(2), (7).

In applying the Act, the Third-Party Defendants contend that Cobb and Skinner are immune from suit under the Act because the claims against them fall under either the "misrepresentation, deceit, or interference with contract" exception or the "discretionary function" exception to the Act's waiver of immunity.  (ECF Nos. 113 at 11-15; 117 at 9-11.)  Even if these exceptions do not apply, the Third-Party Defendants argue, Tri-State's claims against them are barred in any event, because Tri-State failed to comply with the notice requirements of the Act.  (*Id.*)  In its Responses, Tri-State argues that the Act does not immunize Cobb and Skinner from suit because Cobb and Skinner are not sued in

18

their official capacities as a director and manager, respectively, of Northwest, and therefore the Act does not apply. (ECF Nos. 122 at 13-15.)  Tri-State further contends that even if the Act does apply, Cobb and Skinner are not immune from suit under the Act.  (*Id.*; ECF No. 123 at 8.)

Given the factual background of this case, the Court finds that the Act applies to Tri-State's claims against Cobb and Skinner, because their allegedly tortious acts were performed in the service of Northwest's interests, and to the alleged detriment of Tri-State's.  Tri-State does not contest that Cobb and Skinner are employees of a political subdivision, but argues that Cobb's and Skinner's respective positions with Northwest have "no bearing on the Fiduciary Duty Claim," because "that claim is based on Cobb's position as a member of Tri-State's Board of Directors."  (ECF No. 122 at 10.)  However, the facts as pled in Tri-State's Amended Counterclaims show that the Third-Party Defendants joined NPSIG as representatives of Northwest and PRIMA, and acted in concert with Plaintiffs through NPSIG to take action against Tri-State so that Plaintiffs could gain monetary benefits to Tri-State's detriment.  (*See* ECF No. 84 ¶¶ 35-40, 46, 52-53.)  Moreover, Cobb's alleged breach of fiduciary duty occurred in the service of NPSIG's (and Northwest's) activities against Tri-State.  (*Id.* ¶¶ 87-95.)  Tri-State has not alleged that the Third-Party Defendants were acting through pure animus or any other contrary theory.  Thus, although the fiduciary duty claims superficially involve only Cobb's position as a director of Tri-State, Cobb's and Skinner's allegedly tortious actions as pled here were undertaken in the service of Northwest and the other Plaintiff members of NPSIG.  Accordingly, Tri-State's claims fall within the scope of application of the Act.  *See* Neb. Rev. Stat. § 13-903(4).

The Third-Party Defendants argue that Cobb and Skinner are immune from suit because their allegedly tortious actions were committed while performing discretionary functions of their official positions.  (ECF Nos. 113 at 14-15; 117 at 10-11.)  The discretionary function exception applies "to basic policy decisions made in governmental activity, and not to ministerial activities implementing such policy decisions."  *Doe v. Omaha Pub. Sch. Dist.*, 727 N.W. 2d 447, 454 (Neb. 2007).  The Third-Party Defendants argue that Cobb's and Skinner's allegedly tortious actions were "discretionary decisions of [a] director of a political subdivision and are grounded in the social, economic, and political policy of obtaining cost effective power for Northwest's constituents."  (ECF No. 133 at 15.)  Tri-State argues that Cobb was not making a "basic policy decision" when he breached his fiduciary duty to Tri-State, "or, at a minimum, factual issues exist preventing dismissal as to that issue."  (ECF No. 122 at 15.)

As discussed above, the Amended Counterclaims establish that Cobb and Skinner were operating in what they deemed to be the interests of Northwest when they joined NPSIG, when Cobb thereby allegedly breached his fiduciary duty to Tri-State, and when Skinner allegedly encouraged and assisted him in doing so.  Taking such facts as true, as the Court must do when considering a Motion to Dismiss, *see Mobley*, 40 F.3d at 340, Cobb's and Skinner's actions were not "ministerial activities implementing" a policy deemed to be in the interests of Northwest's constituents; rather, their actions constituted the "basic policy decision" itself, in which they attempted to obtain better rates for Northwest's customers to Tri-State's detriment.[10]  *See Omaha Pub. Sch. Dist.*, 727 N.W.

---

[10] Indeed, it would be nonsensical to read the Amended Counterclaims otherwise: if Tri-State intended to suggest that the decisions Cobb and Skinner made were ministerial, mere

2d at 454; *see also Shipley v. Dept. of Roads*, 813 N.W. 2d 455, 462 (Neb. 2012) (discretionary function exception applies "[i]f the court concludes the challenged conduct involves an element of judgment . . . [and] that judgment is of the kind that the discretionary function exception was designed to shield").

Consequently, the Court finds that Cobb's and Skinner's alleged actions were discretionary decisions grounded in their judgment of what was in Northwest's interests, rather than ministerial implementations of Northwest's policies. Thus, the Act's discretionary function exception applies to their acts here and immunizes them from suit. *See* Neb. Rev. Stat. § 13-910(2). Because the Court finds that this exception applies, it need not consider the Third-Party Defendants' alternative argument that they are immune under the exception for claims based upon misrepresentation, deceit, or interference with contract.

However, even if the discretionary function exception did not immunize Cobb and Skinner from suit, the claims would be barred because Tri-State failed to comply with the Act's procedural requirements. The Act requires a litigant to submit a claim to the political subdivision whose employee it wishes to sue within one year from the date upon which the claim accrued, and then to wait for either a final decision from the political subdivision, or for a six month period, followed by a written withdrawal of the claim prior to filing suit. Neb. Rev. Stat. §§ 13-905, 13-906, 13-920. "While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition

---

implementary actions guided by Northwest's policies, then Northwest—not Cobb and Skinner—would be the primary target of the claims, because Cobb and Skinner would be acting as agents implementing policy decisions made by their employer.

precedent to commencement of a suit under the . . . Act." *Keller v. Tavarone*, 628 N.W. 2d 222, 230 (Neb. 2001).

Tri-State argues that its Motion to Amend constitutes "substantial compliance" with the initial notice requirement because its motion contained its claims against Cobb and Skinner and was served on Northwest, which sufficed as written notice of Tri-State's intent to sue Cobb and Skinner.  (*See* ECF No. 122 at 13-14.)  There is some dispute as to whether such a motion could constitute "substantial compliance", or whether the doctrine even applies here.  However, even assuming that Tri-State's motion was filed within one year of the accrual of its claims against Cobb and Skinner and that it substantially complied with the initial filing requirement, Tri-State nevertheless failed to wait for the requisite six month period or for a written denial of its claim, and further failed to withdraw the claim in writing, before filing suit against Cobb and Skinner.  *See* Neb. Rev. Stat. § 13-906.  Rather, Tri-State's Motion to Amend was filed on August 23, 2012, and after that motion was granted, Tri-State filed its Amended Counterclaims on December 3, 2012—less than four months later.  (*See* ECF Nos. 65, 84.)

Therefore, the Court finds that Tri-State's claims against Cobb and Skinner are barred under the Act, both by the discretionary function exception and by Tri-State's failure to comply with the pre-suit procedural requirements under the Act.  Accordingly, Tri-State's claims against Cobb and Skinner must be dismissed.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      The Third-Party Defendants' Motions to Dismiss the Fifth and Sixth Counterclaims pursuant to Rule 12(b)(6) (ECF Nos. 113 & 117) are GRANTED IN PART and DENIED IN PART;

2.      The Motions are GRANTED with respect to Tri-State's Fifth Counterclaim against Cobb and Tri-State's Sixth Counterclaim against Skinner, and all claims against Cobb and Skinner are DISMISSED WITHOUT PREJUDICE due to governmental immunity;

3.      The Motions are DENIED in all other respects; and

4.      Tri-State's Counterclaim action remains pending against Third-Party Defendants Underwood and Reiber, and against Counterclaim Defendants Chimney Rock, Midwest, Northwest, and PREMA.  The parties shall bear their own costs.

Dated this 21st day of August, 2013.

BY THE COURT:

William J. Martínez
United States District Judge