# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Judge William J. Martínez

Civil Action No. 10-cv-02349-WJM-KMT

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT,
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION, and
ROOSEVELT PUBLIC POWER DISTRICT,

    Plaintiffs,

v.

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

    Defendant.

_____

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

    Counterclaim Plaintiff,

v.

CHIMNEY ROCK PUBLIC POWER DISTRICT,
MIDWEST ELECTRIC COOPERATIVE CORPORATION,
NORTHWEST RURAL PUBLIC POWER DISTRICT, and
PANHANDLE RURAL ELECTRIC MEMBERSHIP ASSOCIATION,

    Counterclaim Defendants.

_____

TRI-STATE GENERATION AND TRANSMISSION ASSOCIATION, INC.,

    Third-Party Plaintiff,

v.

RYAN REIBER, and
JERRY UNDERWOOD,

    Third-Party Defendants.

_____

**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT**
_____

In this diversity action, Defendant and Counterclaim Plaintiff Tri-State Generation and Transmission Association, Inc. ("Tri-State") has filed Amended Counterclaims against Plaintiffs Chimney Rock Public Power District ("Chimney Rock"), Midwest Electric Cooperative Corporation ("Midwest"), Northwest Rural Public Power District ("Northwest"), and Panhandle Rural Electric Membership Association ("PREMA").  (ECF No. 84.)  Tri-State also brings claims as a Third-Party Plaintiff against Jerry Underwood and Ryan Reiber (together the "Third-Party Defendants").  (*Id.*)  This matter is before the Court on the Third-Party Defendants' Motions for Summary Judgment on Tri-State's Fifth and Sixth Counterclaims ("Motions"), which are the only claims asserted against them.  (ECF Nos. 194 & 197.)  For the reasons set forth below, the Motions are granted.

## I. BACKGROUND

The relevant facts, viewed in the light most favorable to Tri-State, are as follows. Tri-State is a Colorado corporation, originally formed in 1965 by twenty-six electrical power distribution cooperatives and public power districts in the states of Colorado, Nebraska, and Wyoming for the purpose of furnishing long-term wholesale power and energy to the member cooperatives and districts, which in turn provide power to consumers in their separate geographical areas.  (ECF No. 84 ¶¶ 10, 16.)  Tri-State is now comprised of forty-four members located in the three original states plus New Mexico.  (*Id.* ¶¶ 72, 74.)  Plaintiffs Chimney Rock, Midwest, Northwest, and PREMA are all members of Tri-State, operating in Nebraska under contracts with Tri-State for the

provision of wholesale electric service.  (*Id.* ¶¶ 2-5, 17.)

On September 28, 2009, Plaintiffs filed their Complaint in the District of Nebraska against Tri-State and various individual defendants[1], alleging breach of contract and related claims arising from a dispute over the rates at which Tri-State sold electric power to Plaintiffs.  (ECF No. 1-2.)  After the District of Nebraska granted a Motion to Change Venue under 28 U.S.C. § 1404(a), the case was transferred to this Court on September 24, 2010.  (ECF Nos. 1-71, 1-77.)

After the Court issued an Order granting in part and denying in part Tri-State's Motion to Dismiss (ECF No. 31), Tri-State filed its Answer on February 15, 2012, which included Counterclaims against Plaintiffs Chimney Rock, Midwest, Northwest, and PREMA.  (ECF No. 39.)  Tri-State's Counterclaims arise out of Plaintiffs' formation in 2007 of the Nebraska Power Supply Interest Group ("NPSIG").  Tri-State alleges that Plaintiffs, through NPSIG, sought to breach their contracts with Tri-State and pressure Tri-State to change its pricing rate, and planned and filed the instant lawsuit.  (ECF No. 84 ¶¶ 34-35.)  During discovery, Tri-State obtained information alerting it to additional claims, and consequently Tri-State filed a Motion to Amend the Scheduling Order and to Assert Additional Counterclaims on August 23, 2012.  (ECF No. 65.)

Magistrate Judge Kathleen M. Tafoya granted Tri-State's Motion to Amend (ECF No. 83), and Tri-State filed its Amended Counterclaims on December 3, 2012, joining the Third-Party Defendants to this action.  (ECF No. 84.)  The Amended Counterclaims

---

[1] These individual defendants were subsequently dismissed from the action.  (*See* ECF Nos. 1-26, 146.)

included a new Fifth Counterclaim[2] for breach of fiduciary duty against Wayne Cobb, a member of the board of directors of Northwest, and Jerry Underwood, a member of the board of directors of PREMA, both of whom were members of Tri-State's board of directors at all relevant times and allegedly failed to disclose material information about NPSIG's activities to Tri-State.  (*Id.* ¶¶ 26-27, 47, 53, 87-91.)  Tri-State also brought a Sixth Counterclaim for aiding and abetting Cobb's and Underwood's breach of fiduciary duty, asserted against Plaintiffs, as well as against Rolland Skinner, an employee of Northwest, and Ryan Reiber, an employee of PREMA.  (*Id.* ¶¶ 8-9, 92-95.)  The Court subsequently granted Motions to Dismiss by Cobb and Skinner, dismissing all claims against them.  (ECF No. 252.)

On June 14, 2013, both Reiber and Underwood filed Motions for Summary Judgment.[3]  (ECF Nos. 194 & 197.)  On July 5, 2013, Tri-State filed its Responses to the Motions.  (ECF Nos. 206 & 207.)  Reiber's and Underwood's Replies were filed on July 22, 2013.  (ECF Nos. 230 & 232.)

## II.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact

---

[2] Although all of Tri-State's claims are denominated "Counterclaims" in its pleadings, Tri-State's Fifth Counterclaim is in fact a third-party claim asserted against two individuals who were not previously parties to the action.  (*See* ECF No. 84 at 57-58.)  Similarly, Tri-State's Sixth Counterclaim is asserted against new third parties, in addition to Plaintiffs.  (*Id.* at 58.)  The Court will refer to Tri-State's Fifth and Sixth Counterclaims as pled, but notes that the claims against the Third-Party Defendants are more properly denominated "Third-Party Claims" pursuant to Federal Rule of Civil Procedure 14, and will thus refer to the claims against the Third-Party Defendants.

[3] As Cobb and Skinner are no longer parties to this action, the Court will refer to the instant Motions they filed with their respective co-Third-Party Defendants as if filed only by Underwood and Reiber, the Third-Party Defendants remaining in this case.

4

and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury, or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

The Third-Party Defendants make two arguments that summary judgment is warranted as to Tri-State's claims against them: (1) Tri-State has no valid theory of damages; and (2) Tri-State's fiduciary duty claims are barred by the statute of limitations. (ECF Nos. 194 & 197.) Because the Court finds the first argument dispositive of the Motion, the Court will analyze it first.

**A.    Damages**

The Third-Party Defendants' Motions[4] contend that summary judgment should be

---

[4] Although Reiber's and Underwood's Motions were filed separately, they make identical legal arguments, diverging only with regard to the distinction between the claim against

granted on Tri-State's claims against them because Tri-State has no valid theory of damages, and damages are a required element of a claim for breach of fiduciary duty. (ECF Nos. 194 at 8-13; 197 at 27-37.)

The parties agree that Colorado law governs Tri-State's Third-Party Claims. (*See* ECF Nos. 194 at 6; 197 at 19 n.8; 206 at 28.) Under Colorado law, a claim for a breach of fiduciary duty has four elements: (1) a fiduciary duty owed to plaintiff, (2) breach of the fiduciary duty, (3) damages, and (4) causation. *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993). Similarly, a claim for aiding and abetting a breach of fiduciary duty requires proof of (1) breach of a fiduciary duty owed to plaintiff, (2) knowing participation in and substantial assistance to that breach, and (3) damages. *Nelson v. Elway*, 971 P.2d 245, 249-50 (Colo. App. 1998). The Third-Party Defendants challenge only the damages element of each of these claims. Because both of Tri-State's Third-Party Claims—both the claim against Underwood for breach of his fiduciary duty, and the claim against Reiber for aiding and abetting Underwood's breach—depend on damages caused by Underwood's breach of fiduciary duty, both claims can be analyzed together. (*See* ECF No. 84 at 57-58.)

Tri-State seeks damages falling into three categories: (1) litigation costs incurred in defending against Plaintiffs' claims, under the "wrong of another" doctrine; (2) nominal damages based on harm to Tri-State's corporate governance model; and (3) injunctive

---

Underwood for breach of fiduciary duty and the claim against Reiber for aiding and abetting that breach. (*See* ECF Nos. 194 & 197.) Reiber's Motion repeatedly refers to Underwood's Motion and incorporates arguments made therein, noting that both claims depend on establishing Underwood's breach of fiduciary duty. (*See* ECF No. 194 at 6-12.) Accordingly, the Court will discuss the Motions together.

relief, prohibiting Underwood from committing any future breach of fiduciary duty against Tri-State.[5] (ECF No. 206 at 34-43.) The Court will consider each damages theory in turn.

### 1. "Wrong of Another" Doctrine

Tri-State argues that Underwood's breach of his fiduciary duty was a cause of the litigation Plaintiffs brought against Tri-State, and therefore Tri-State can recover the costs of the litigation under the "wrong of another" doctrine. (ECF No. 206 at 35-39.)

Colorado law permits a party to recover litigation expenses as an appropriate measure of damages against a third party in a separate action, where those expenses were caused by a wrongful act by the third party. *Rocky Mountain Festivals, Inc. v. Parsons Corp.*, 242 P.3d 1067, 1071 (Colo. 2010). "When the natural and probable consequence of a wrongful act has been to involve a plaintiff in litigation with others, the general rule is that the reasonable expenses of the litigation may be recovered from the wrongdoer." *Id.* (citing *Elijah v. Fender*, 674 P.2d 946, 951 (Colo. 1984)) (brackets and internal quotation marks omitted).

The Third-Party Defendants argue that Tri-State cannot produce evidence establishing that Underwood's alleged breach of fiduciary duty caused Plaintiffs to file suit against Tri-State, and therefore cannot recover under this doctrine. (ECF No. 197 at 31.) Because the litigation expenses must be "the natural and probable consequence" of the wrongful conduct alleged, a failure to prove causation prevents recovery. (*Id.*)

Although Tri-State admits that Underwood's breach was not the sole cause of

---

[5] Tri-State has previously suggested a fourth theory of damages, namely pre-filing damages consisting of the resources fruitlessly expended in attempting to resolve Plaintiffs' disputes before Plaintiffs filed this lawsuit. (*See* ECF No. 122 at 8-9.) Tri-State no longer seeks pre-filing damages. (ECF No. 206 at 34 & n.6.)

7

Plaintiffs' litigation against it, Tri-State contends that the "wrong of another" doctrine permits recovery for partial causation where the wrongful act "result[ed] in the plaintiff's litigation of distinct and segregable claims" against Tri-State. (ECF No. 206 at 35 (quoting *Rocky Mountain Festivals*, 242 P.3d at 1074).) Tri-State argues that the costs associated with the "distinct and segregable claims" caused by Underwood's breach are those costs that could have been avoided had Underwood disclosed Plaintiffs' potential theories of liability to Tri-State, because Tri-State would have had an opportunity to dissuade Plaintiffs from filing some or all of those claims. (*Id.* at 37.) Specifically, Tri-State argues that if Underwood had disclosed NPSIG's activities, Tri-State could potentially have persuaded Plaintiffs to forego filing several of their claims, including those claims that were subsequently dismissed through stipulation and those dismissed in the Court's Order on Tri-State's Motion to Dismiss. (*Id.* at 38 (citing ECF Nos. 31, 138, 146, 252).) Tri-State contends that there are factual disputes as to whether Underwood's breach caused the litigation costs associated with those now-dismissed claims, making summary judgment inappropriate. (*Id.*)

Despite Tri-State's assertion otherwise, the Court finds this theory of damages entirely speculative. It is conceivable that Underwood's alleged breach of fiduciary duty had a detrimental effect on Tri-State's ability to negotiate with Plaintiffs over their claims and indirectly increased the overall litigation costs. However, it is inconceivable in the context of this case that that causal effect could be traced to the costs associated with the specific claims that have since been dismissed. According to Tri-State's own pleadings, Underwood's alleged breach of fiduciary duty resulted in a failure to disclose the entirety of NPSIG's litigation activities, not any "distinct and segregable" subset of claims. (*See*

ECF No. 84.)  Tri-State has neither alleged facts nor adduced any evidence supporting its theory that Underwood's breach resulted in Plaintiffs' litigation of the specific claims that were later dismissed.

Accordingly, the Court finds that Tri-State's "wrong of another" theory of damages fails as a matter of law, as evidence "must be based on more than mere speculation" to defeat a motion for summary judgment.  *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

2.   Nominal Damages

Tri-State next argues that it has suffered damages in the form of harm to its corporate governance model, specifically a loss of trust among its Board of Directors and a concomitant loss of effective management capacity as a result of Underwood's alleged breach of fiduciary duty.  (ECF No. 206 at 39-43.)  Tri-State admits that the harm to the corporate governance model does not result in ascertainable monetary damages, but contends that it is entitled to nominal damages.  (*Id.*)

The Colorado Supreme Court has stated that "[t]he breach of fiduciary duty cause of action is a tort to remedy *economic* harm suffered by one party due to a breach of duties owed in a fiduciary relationship."  *Accident & Injury Med. Specialists, P.C. v. Mintz*, 279 P.3d 658, 663 (Colo. 2012) (emphasis added).  The explicit reference to economic harm appears to exclude the undisputedly non-economic harm to Tri-State's corporate governance model that is alleged here.  However, neither party has identified any Colorado law clearly establishing whether nominal damages are available for a breach of fiduciary duty claim, nor has the Court found any such authority.  Instead, the Third-Party Defendants argue that nominal damages are generally a remedy for a breach of contract

where no actual damages result, and are unavailable in tort actions like a breach of fiduciary duty. (ECF No. 197 at 34 (citing Restatement (Second) of Torts § 907 cmt. a (2012)).) Tri-State cites case law from other jurisdictions in which nominal damages were permitted for breach of fiduciary duty claims, and argues that Colorado would follow suit. (ECF No. 206 at 40-42 (citing *L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 813 F.2d 332, 338 (11th Cir. 1987) (Alabama law); *Alloy v. Wills Family Trust*, 944 A.2d 1234 (Md. App. 2008) (District of Columbia law); *In re Wiggins*, 273 B.R. 839, 881 (Bankr. D. Idaho 2001) (Idaho law); *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 901, 917 (Del. Ch. 1999) (Delaware law); *Garcia v. Coffman*, 946 P.2d 216, 226 (N.M. App. 1997) (New Mexico law)).)

      The Court has reviewed the cases Tri-State cites and finds that each is distinguishable from the instant case, and none follows or establishes a general rule permitting nominal damages for a breach of fiduciary duty claim. *See L.A. Draper & Son*, 813 F.2d at 337-38 (affirming award of nominal damages for breach of fiduciary duty by analogy to an Alabama case analyzing a breach of covenant not to compete); *Alloy v. Wills Family Trust*, 944 A.2d at 1262 (permitting recovery of nominal damages where the breaching fiduciary directly profited from self-interested diversion of opportunities); *In re Wiggins*, 273 B.R. at 881 (awarding nominal damages for breach of fiduciary duty where actual damages existed but amount was not adequately proven); *O'Reilly*, 745 A.2d at 916-17 (permitting *per se* nominal damages for a breach of the fiduciary duty of disclosure involving "communications that contemplate stockholder action", and distinguishing such claim from a breach of fiduciary duty not involving stockholder

communications); *Garcia*, 946 P.2d at 223-24 (affirming nominal damages award on claim of breach of fiduciary duty where it overlapped with proven claim for fraudulent misrepresentation, and where plaintiff "did not state a separate cause of action for breach of fiduciary duty"). Thus, as each of these cases is either factually or analytically distinguishable, none compel the conclusion that Colorado would permit an award of nominal damages for a breach of fiduciary duty in this case.

The Court finds instructive the analysis of the Arizona Court of Appeals in *AMERCO v. Shoen*, 907 P.2d 536 (Ariz. App. 1995). In *AMERCO*, the court reviewed cases permitting recovery of nominal damages for a breach of fiduciary duty and found that, the courts in these cases used the term "nominal damages" broadly to describe situations where "either plaintiffs experienced actual damages insusceptible to reasonable calculation or defendants had engaged in corporate plunder or diverted corporate opportunities to themselves." 907 P.2d at 542 n.7. That is, "nominal damages" in these cases were economic damages awarded in compensation for incalculable actual damages or in restitution for the breaching party's improper gains. *Id.* at 542. Because neither of these situations occurred in *AMERCO*, the court concluded that Nevada law would not permit an award of non-economic nominal damages. *Id.*

Colorado courts have held that "recovery [for a breach of fiduciary duty] is allowed once the cause and existence of damages have been established, even though the exact amount of damages may be uncertain or impossible to determine." *Graphic Directions*, 862 P.2d at 1024 (vacating damages award because the evidence presented was insufficient to permit the jury to calculate the amount of lost profits and failed to establish

causation). As in the cases described in *AMERCO*, Colorado permits these so-called nominal damages where actual damages exist but are not calculable, as opposed to where no actual damages exist.

Here, Tri-State has not established the existence of actual damages that are insusceptible to calculation, because the Court has rejected its only theory of actual damages, under the "wrong of another" doctrine. Tri-State has not made any allegation that Underwood "engaged in corporate plunder or diverted corporate opportunities to [himself]" such that restitution of his improper gains would establish a form of monetary damages. *See AMERCO*, 907 P.2d at 542 n.7. Rather, Tri-State seeks nominal damages for the non-monetary injury to the Board of Directors' sense of collective trust and the resultant injury to Tri-State's corporate governance model. These non-economic damages for a breach of fiduciary duty claim are not supported by the cases Tri-State cites.[6]

Therefore, the Court finds that nominal damages for non-economic harm, where no actual damages exist, are not available for a breach of fiduciary duty under Colorado

---

[6] The only Colorado case Tri-State cites in support of its nominal damages argument is *Steward Software Co., LLC v. Kopcho*, 275 P.3d 702, 715 (Colo. App. 2010), *rev'd on other grounds*, 266 P.3d 1085 (Colo. 2011). However, *Steward Software* involved an error in jury instructions regarding double recovery, and only the concurring and dissenting opinion made any direct reference to the availability of nominal damages for a breach of fiduciary duty. *Id.* at 715 (Webb, J., concurring in part and dissenting in part) (dissenting in that "the majority cites no case, nor have I found one in Colorado, finding error because a nominal damages instruction was given . . . . Not giving such an instruction would be contrary to cases holding that nominal damages are a matter of right in actions for . . . certain torts, including breach of fiduciary duty"). In support of the assertion that nominal damages are available for a breach of fiduciary duty, the dissenting opinion cites the same cases from other jurisdictions cited here by Tri-State, which are distinguishable from the instant case and largely rely on the broader meaning of the term "nominal damages" discussed above. *See id.* Thus, *Steward Software* does not establish that non-economic nominal damages are available for a breach of fiduciary duty in Colorado.

law.  Accordingly, Tri-State has not established any theory of damages under which it could recover for Underwood's alleged breach of fiduciary duty or Reiber's alleged aiding and abetting that breach.

      3.     <u>Injunctive Relief</u>

Finally, Tri-State argues that, even in the absence of actual damages, its claims against the Third-Party Defendants do not fail because it seeks injunctive relief.  (ECF No. 206 at 43.)  The injunction Tri-State seeks would prohibit Underwood from committing any breach of fiduciary duty against Tri-State in the future, in order to protect Tri-State from further harm to its internal corporate governance.  (*Id.*)

It is undisputed that Underwood no longer holds a seat on Tri-State's Board of Directors.  (*See* ECF No. 232-6 at 7 (removing Underwood from the Tri-State Board of Directors on September 5, 2012).)  Thus, Underwood is no longer under a fiduciary duty to Tri-State, and can no longer breach said duty.  Tri-State's request for injunctive relief is therefore moot.  *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (holding that request for injunctive relief is moot where "there is no reasonable expectation that the wrong will be repeated . . . [unless] there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive").

In sum, the Court finds that Tri-State has no viable theory of damages resulting from Underwood's alleged breach of fiduciary duty.  As damages is an element of both of Tri-State's claims against the Third-Party Defendants, summary judgment is warranted as to both Third-Party Claims.

**B.**    **Statute of Limitations**

The Motions also argue that Tri-State's Third-Party Claims were not timely filed

and are therefore barred by the statute of limitations. (ECF Nos. 194 & 197.) Because the Court has granted summary judgment based on the lack of damages, the Court need not reach the statute of limitations argument.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Third-Party Defendants' Motions for Summary Judgment (ECF Nos. 194 & 197) as to Tri-State's Fifth Counterclaim against Underwood and Tri-State's Sixth Counterclaim against Reiber are GRANTED;

2. Judgment shall enter in favor of Underwood and Reiber; and

3. This action remains pending as to Tri-State's Counterclaims against Chimney Rock, Midwest, Northwest, and PREMA, and Plaintiffs' Claim 4 against Tri-State. The Third-Party Defendants shall have their costs.

Dated this 3rd day of March, 2014.

BY THE COURT:

_____
William J. Martínez
United States District Judge